United States District Court
District of Massachusetts
Western Division

Springfield, Massachusetts                    Civil Action No.05-30082 MAP


Scott Stern,
        Plaintiff,      )
    vs.                 )
                     ) Complaint against Defendants for
Mary Stern, Gary Matteson, and Evan  ) Violations of M.G.L. Chapter 272 §99;
Ehmann                 ) M.G.L. Chapter 265 §43A; M.G.L. Chapter 274,
                    ) Section 2 and Section 7; M.G.L. Chapter 12,
       Defendants    ) Section 11H and Section 11 I;
                    ) M.G.L. Chapter 214 §1B;
                    ) Massachusetts Constitution
                    ) Articles I(CVI), X, and XIV
                    ) United States Constitution Fourth Amendment
                    ) Unreasonable Search and Seizure
                    ) United States Constitution First Amendment
                    ) Freedom of Association
                    ) United States Federal Code of Regulations
                    ) 18 U.S.C. §2510, §2511, §2512, §2515
                    ) Title III of Omnibus Crime Control and Safe
                    ) Streets Act of 1968
                    ) Title 42 U.S.C. §1983, Title 18 U.S.C. §242

## MEMORANDUM OF LAW IN OPPOSITION TO DISMISS THE COMPLAINT

## The Rule of Law

The Judiciary has noted that "[w]e are and always have been a law-based society. We deeply and fundamentally believe in the rule of law and in using law to resolve an almost endless variety of social problems." Sellig, 1999 WL 515795.

## The Federal Question

Federal Courts of United States have jurisdiction over case in which some right or sustained by construction of Constitution, laws, or treaties of United States. Railroad Co. v Mississippi (1880) 102 US 35, 12 Otto 135, 26 L Ed 96

When does the question of federal jurisdiction come into affect? Federal jurisdiction under 42 USCS §1983 may be invoked, plaintiff herein argues, when the agent (GAL) acting under color of law, conspires by aiding and abetting two private citizens in a conspiracy to denigrate, demoralize and demean the plaintiff and violated the plaintiff's constitutional rights as accorded by the United States Constitution. In this case, it is the defendant Evan Ehmann, Licsw that aided the defendant Mary Jane Stern and defendant Gary Matteson, by receiving, listening, and writing, ad nauseum, of and about the contents of private conversations between a parent (plaintiff) and his non-custodial three minor children (plaintiff maintains shared legal custody). Defendant, Mary Jane Stern, by means of the Hampshire Probate and Family Court, is seeking sole legal custody in an effort to deny this plaintiff his paternal, substantive and legal rights accorded to him since 1994 by the Honorable Judge David Sacks (Judgment of Divorce Nisi), and re-affirmed by Chief Justice of the Probate Courts Sean Dunphy (Agreement of the Parties, September 16, 1997). Proceedings of the Hampshire Probate and Family Court have been stayed by the Honorable Judge Geoffrey Wilson, pending the resolution of this federal district court case and the concurrent State Superior Court case.

Plaintiff seeks redress and a remedy of egregious, negligent, willful and malicious

and reckless regard of the laws of the United States and the Constitution of the United States against this plaintiff, by the defendants. Counsel for defendant Mary Jane Stern asks that you dismiss, with prejudice, the complaints for lack of a federal question. All law falls under the penumbra of the federal government, including that of state law.

"Where rights under state laws become material to the application of federal statutes, federal courts look to the decisions of the states, where those rights arise to determine what they are, even though federal courts are not bound by state decisions interpreting federal statutes." Dayton & M.R. Co. v Commissioner (1940, CA4) 112 F 2d 627.

If this court finds that plaintiff's responsive pleading lacks the necessary elements for continuation in the federal court, the action should not be dismissed with prejudice. In the alternative, the action should be remanded to the Hampshire Superior Court, but plaintiff prays it not to be dismissed with prejudice. In a tactical move by the defendant's counsel, dismissing with prejudice the defendant's egregious violations would effectively deny the plaintiff the ability to recover for wrongs and violations (redress of grievances) and of liberties and constitutional rights secured and guaranteed by the United States Constitution, the Constitution of Massachusetts and Federal and State Law.

Thus, dismissal with prejudice would grant the denial of prosecution against defendants in state courts of comparable jurisdiction.

Wherein, your moving party argues that the proper venue is the Federal District Court of Springfield, Massachusetts for the following reasons herein stated for the applicable federal constitutional and federal laws.

## SOME FEDERAL QUESTIONS

"There is no single precise definition of the concept of the original federal-question jurisdiction of Federal District Courts under 28 USCS §1331. Merrell Dow

Memorandum of Law in Opposition to Dismiss the Complaint

3

Pharmaceuticals Inc v Thompson et al., 478 US 804; 106 S Ct 3229

Do Guardian Ad Litem's maintain the ability to act "freely" in such a capacity to violate the rights of plaintiff, in conspiracy with private actors, contrary to the Public Law of the United States and the Constitution of the United States?

Does the United States Constitution's Fourth Amendment of Unreasonable Search and Seizure of one's person, papers and effects, including that of illegal recordings command private citizens as it does the Federal, State and Local law enforcement agencies, including officials acting as an arm of the court?

Does the United States Constitution's Fourth Amendment grant the right of private citizens to unreasonably search and seize private conversations and recordings and present them to "state officials" in their "official capacity" under color of state law?

Does 42 USCS §1983 extend to private citizens, if, after their conduct has violated other laws of the United States, provided illegal recordings to "state officials" thus creating a deprivation of federal civil rights of the victim(plaintiff)?

Does a plaintiff have a cause of action against federal investigatory agencies for failure to prosecute criminal behavior for deprivation of plaintiff's civil rights, which is consistent with Title III of the Crime Control and Safe Streets Act of 1968?

Does the Fourth Amendment's clause for the right to privacy extend to private citizens and "state" officials acting under color of law under Title III of the Omnibus Crime Control and Safe Streets Act of 1968?

## FEDERAL CASE LAW

18 USCS §242 states, in part:

"Whoever, under color of any law, statute, ordinance, regulation or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the

deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both:"

"A suit arises under the Constitution of the United States and laws of the United States only when plaintiff's statement of his own cause of action shows that it is based upon those laws of that Constitution; it is not enough that defendant may find in Constitution or laws of United States some ground of defense." In re Winn (1909) 213 US 458, 53 L Ed 873, 29 S Ct 515 (ovrld in part by Ex parte Harding (1911) 219 US 363, 55 L Ed 252, 31 S Ct 324.

Plaintiff sought recovery under 42 USCS §1983.  Defendant Gary Matteson's Counsel argues that "plaintiff has the burden of showing that subject matter jurisdiction does in fact exist." Aversa v United States, 99 F. 3d 1200, 1209 (1st Circuit 1996).

Plaintiff's pleading stated in paragraph twenty one (21) :

"Plaintiff, Scott Lee Stern, has brought this action to enforce the laws of the United States, violations by the defendant (s) against the plaintiff's Federal Constitutional rights under 42 USCS 1983 and Title III of the Omnibus Crime Control and  Safe Streets Act of 1968 18 USCS §2510, §2511, §2515, et seq."

"Merely alleging violation of constitutional rights does not confer jurisdiction on federal court" Bartlett v Duty (1959, DC Ohio) 174 F Supp 94, 12 Ohio Ops 2d 737, 84 Ohio L Abs 555.

"Pleading had to state facts showing violation of constitutional right" Woodhouse v Budwesky (1934, CA4 Va) 70 F 2d 61, cert den (1934) 293 USCS 573, 79 L Ed 671, 55 S Ct 84.

The Federal Rules of Procedure, under 12 ( b) (6) (1) states, in part:

"[the] district Court must construe the complaint liberally, treating all well-

pleaded facts as true and indulging all reasonable inferences in favor the plaintiff"
(Aversa Ibid at 1209-1210)

Plaintiff maintains that allegations alleged in paragraphs enumerated forty-five
(45) through seventy three (73) were not objected to by the defendant Mary Jane Stern
and defendant Gary Matteson,  and must therefore held as true in favor of the plaintiff.
The allegations include in paragraph seventy one the causal link that defendant Gary
Matteson provided the residence (police report identified the number to the owner of the
residence), and the telephone number (police report identified the number plaintiff dialed
to be the residence of defendant Gary Matteson, where the factual illegal interception
took place.  Defendant Mary Jane Stern "handed" the tape of conversations to the
Guardian Ad Litem, defendant, Evan Ehmann, Licsw, during one of several interviews at
the residence of defendant, Gary Matteson as written by the defendant Evan Ehmann,
Licsw in the Report of the Guardian Ad Litem of November 29, 2004.

Wherein, plaintiff's constitutional rights under Title III of the Omnibus Crime
Control and Safe Streets Act of 1968 were subsequently violated, and thus, deprived
plaintiff of his rights under the United States Fourth Amendment of the Constitution that
requires federal jurisdictional review by this court.

Defendant Gary Matteson's counsel elucidates to 28 USCS §1331.  28 USCS
§1331 provides not only authority to decide whether cause of action is stated by
plaintiff's claim that he has been injured by violation of United States Constitution, but
also authority to choose among available judicial remedies in order to vindicate
constitutional rights. Bush v. Lucas (1983) 462 US 367, 76 L Ed 2d 648, 103 S Ct 2404.

"Section 1983 of the Civil Rights Act of 1871 renders individuals
in state government liable when they deprive citizens of "any rights, privileges or immunities
secured by the Constitution and laws" 42 U.S.C. 1983 (1982)  This provision, enacted as section

1979 of the Civil Rights Act of 1871, was originally a part of the general civil rights legislation passed by Congress after the Civil War in an effort to give substantive freedom to the emancipated slaves. (Slaughter House Cases, 83 U.S. (16 Wall.) 36, 71 (1873).

A 42 U.S.C. §1983 plaintiff must also show that the defendants, herein named, Mary Jane Stern, Gary Matteson, and Evan Ehmann, are individuals, who, acting under the color of state law violated the Civil Rights of the plaintiff Scott Stern by participating in a conspiracy to illegally record the Plaintiff contrary to the Constitution of the United States and Public Law of the United States.

"Where bill sets up violation of federal constitution, federal court must take jurisdiction where it determines that question made in good faith is presented to it for its decision" Illinois C.R. Co. v Adams (1901) 180 US 28, 45 L Ed 410, 21 S Ct 251; Hays v Port of Seattle (1920) 251 US 233, 64 L Ed 243, 40 S Ct 125.

"Jurisdiction of district Court is to be determined by allegations of complaint" Moore v Chesapeake & O.R. Co. (1934) 291 US 205, 78 L Ed 755, 54 S Ct 402 (Criticized in Heckelmann v Piping Cos (1995, ND Okla) 904 F Supp 1257.

42 U.S.C. §1983 states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, Any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia"

Memorandum of Law in Opposition to Dismiss the Complaint

(History: R.S. §1979' Dec 29, 1979, P.L. 96-170, §1, 93 Stat. 1284; Oct 19, 1996, P.L. 104-317, Title III, §309 (c), 110 Stat. 3853)

Plaintiff, Pro-Se, in his own right (reis juris), brought suit in the United States District Court, a right of action (Rectus in Curia) to redress wrongs that defendants committed contrary to Public Law of the United States of America

Title III of Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§2510-2520, does not unconstitutionally authorize such broad intrusions as to violate Fourth Amendment, allowing obtaining of testimonial evidence of crimes in violation of Fourth and Fifth Amendments, violate First Amendment rights of free speech, allow search for which no notice prior to entry is required, or allow interceptions without establishment of probable cause. United States v. Sklaroff (1975, CA5 Fla) 506 F2d 837, cert den (1975) 423 U.S. 874, 46 L.Ed 2d 105, 96 S Ct 142.

The defendants violated plaintiff's Fourth Amendment right by intercepting the conversations of the plaintiff with his minor children, unauthorized by any court, and without probable cause. Whereupon, when the *defendant Evan Ehmann, Licsw, without probable cause, received the recordings illegally obtained by the defendant Mary Jane Stern, at the residence of the defendant Gary Matteson, by use of telephonic equipment owned by Gary Matteson, and a number leased thru a telephone company, thus obtaining conversations to be effectuated as testimonial evidence to be used against the Plaintiff, did thereby violate plaintiff's Fourth Amendment right of unreasonable search and seizure of his property*. Thus, plaintiff's venue for Jurisdiction of this matter clearly falls on the federal courts "to redress grievances" of the defendants and the act of conspiracy, committed by the defendants, by procuring the recordings, utilizing the recordings, and publishing the recordings, at the Hampshire Probate and Family Court, for others to review and read, did thereby abrogate the intent of the United States Congress when they established Title III of the Omnibus Crime

Control and Safe Streets Act of 1968.

"There exists no statutory procedure whereby private individuals can secure official authorization of interceptions they wished to make and thus they will never be in position to invoke "good faith" defense because such defense is available only to law enforcement personnel and to others, like telephone company employees, who may be expected to assist in implementing authorized interceptions." Citron v. Citron (1982, SD NY) 539 F Supp 621, affd (1983, CA2 NY) 722 F2d 14, cert den (1984) 466 US 973, 80 L.Ed 2d 823, 104 S Ct 2350

"When many individuals together take steps necessary for recording of telephone conversations, victim's privacy is violated, regardless of who actually listens to tapes; argument of telephone company that not of its employees actually listed to tape conversations is no defense in suit seeking civil damages under 18 USCS §2520." Jacobson v Rose (1978, CA9 Nev) 592 F 2d 515, 26 FR Serv 2d 693, cert den (1979) 442 US 930, 61 L Ed 2d 298, 99 S Ct 2861.

"18 USCS §2520 (Omnibus Crime Control and Safe Streets Act) applies to [husband's] placement of recording device on telephones within marital home without [wife's] knowledge or consent." Heggy v Heggy (1988, WD Okla) 699 F Supp 1514, affd, remanded (1991, CA10 Okla) 944 F2d 1537, cert den (1992) 503 US 951, 117 L Ed 2d 651, 112 S Ct 1514.

"In order to prevail under 18 USCS §2520 plaintiff must show that oral communications were in fact intercepted, disclosed, or used by defendant in violation of 18 USCS §2510 et seq." Broadway v Montgomery (1976, CA5 Ala) 530 F2d 657.

It is clear from plain language of 18 USCS §2520 ( a ) that it provides private right of action to enforce 18 USCS §2511 (1) ( a ).

"Fact that it may appear in suit in federal court against state officer whose action under color or state law is alleged to invade right protected by federal constitution against state action, that such officer has exceeded authority conferred by state, does not deprive court of jurisdiction." Sterling v Constantin (1932) 287 US 378, 77 L Ed 375, 53 S Ct 190

The Hampshire Probate and Family Court Judge, the Honorable Geoffrey

Wilson, upon proper motion, redacted three pages of the Guardian Ad Litem's report of November 29, 2004, pursuant to United States Code 18 U.S.C. §2515.

The Honorable Judge Geoffrey Wilson would not have ordered the redaction of the three pages of the Guardian Ad Litem's report unless your moving party had substantially *proven the necessary elements for the redaction of the three pages the defendant Evan Ehmann, Licsw had written in his report of the Guardian Ad Litem of November 29, 2004.* In essence, your moving party provided the necessary legal framework to prove the Honorable Judge Geoffrey Wilson that there had been an egregious violation; a violation contrary to the Constitution; a violation contrary to the Code of the United States of America by the Defendant Evan Ehmann, Licsw.

Justice Black stated in Mapp:

"Nothing can destroy a government more quickly that its failure to observe its own laws, or worse, its disregard of the charter of its own existence... As Mr. Justice Brandeis, dissenting, said in Omstead v United States, 277 U.S. 438, 485 (1928): "Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example... If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."

Plaintiff, your moving party, never authorized the illegal recording of his conversations. Nor did Plaintiff, at any time, grant the defendants, individually, or collectively, the authority and privilege to violate his United States Constitutional Rights. The Guardian Ad Litem, appointed by the Judge of the Probate and Family Court, "is an arm of the Court and an integral part of the judicial process" (Sarkisian v Benjamin, 62 Mass App Ct 741) and is considered an "officer of the court" (Tripp v Gifford, 155 Mass. 108, 1891)

The defendant Evan Ehmann, Licsw, is an "arm of the court"

Thus, the Guardian Ad Litem, by receiving the illegally recorded conversations of the Plaintiff with his minor children, on a particular day and time, by and because of the

defendants Mary Jane Stern, and Gary Matteson, did thereby extend the arm of the state to include these other actors, and did thereby grant the Plaintiff a federal cause of action against each of the defendants according to 42 U.S.C. §1983 by means of conspiracy against the plaintiff's constitutional rights.

"Punitive damages could be awarded upon showing that interceptions were perpetrated maliciously" Gerrard v Blackman (1975, ND Ill) 401 F Supp 1189.

These recordings of the plaintiff and his three minor children were conducted over a period of time, approximately eight months. During this process, the plaintiff's children were recalcitrant, reluctant, and hesitant to engage in meaningful and discourse during the regular weekly telephone conversations with the plaintiff, their father. During this period of time, the three minor children rarely engaged in meaningful conversations with their father, and visitation is currently non-existent. Which is in contrast to their behaviors prior to the illegal actions of the defendants by violating the rights of the plaintiff. The three minor children discussed issues relative to their school and other interests, with the plaintiff. This court may be able to remedy the Parental Alienation that plaintiff has suffered, by the defendants, and it can remedy other matters as well. Jurisdiction in this venue is appropriate when violations of federal statute or constitutional deprivation has occurred. Eight months of illegal wiretapping of conversations between the plaintiff and his minor children certainly would give rise to "malicious" and with proper discovery these facts may be more ascertainable.

"$10,000 award available under 18 USCS §2520 is designed to compensate plaintiff for all of the transgressor's misdeeds under wiretapping statute arising out of closely related course of conduct that takes place over a relatively short period of time, and recordings, disclosures, and use of illegally intercepted communications by defendant, who secretly recorded conversations of his employees, disclosed records to his wife and others, and used them in attempt to discharge two of his employees, were sufficiently interrelated and time-compacted so as not to invoke multiple applications of the $10,000 statutory award. Dorris v Absher (1999, CA6 Tenn) 179 F3d

420, 15 BNA IER Cas 193, 138 CCH LC P 58643, 1999 FED App 200P.

The defendants did not seek court authorization to conduct an illegal taping of the conversations of the plaintiff and his three minor children over a period of approximately eight months. The plaintiff, with authority by judgment of divorce decree and Agreement of the Parties by the Hampshire Probate and Family Court, has shared legal custody of three minor children, and, in so doing, agreed with the defendant Mary Jane Stern to engage in telephone conversations with the three minor children on Tuesday, Wednesday and Thursday evenings. No modifications have occurred by the court at this time. On or about March of 2004, a beeping sound emanated, at various dates and times, from the phone number 1-413-648-9003, the residence of defendant Gary Matteson, as is indicated by the North Adams Police Report of November 17, 2004, which had recently became the living arrangement for the three minor children and plaintiff's ex-wife, the defendant, Mary Jane Stern.

The defendants, by their act and actions, of illegally recording conversations of plaintiff with his five minor children (three minor children reside with plaintiff's ex-wife; the other two minor children were in the care and custody of the plaintiff during various dates and times of the telephone conversations, did thereby violate plaintiff's Fourth Amendment right of unreasonable search and seizure.

Article IV of the United States Constitutions states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Historically, Article IV has been for improper police action and the abuse of police power. Plaintiff argues that the intent of the framers of the Constitution were to protect the people, from the people, regardless of their occupation or position, and not just to protect the

people from the English military which effectuated illegal searches and seizures of the colonies without authorization from the King of England. Article IV does not state that the government shall be the only entity to issue warrants, but rather, it is ambiguous, that "no warrants shall issue" and that upon "probable cause". The framers of the Constitution wanted to protect the people from the people themselves; in that a group of people, could not, search others in "their persons, houses, papers and effects, against unreasonable searches and seizures" not just the military.

This interpretation is articulated in Justice Douglas's dissent in Wolf v. Colorado, 338 U.S. 25 (1949) overruled by Mapp v Ohio, 367 U.S. 643 (1961), Justice Douglas stated:

"It is disheartening to find so much that is right in an opinion which seems to me so fundamentally wrong (Commentary: Justice Douglas was right in his dissent, Mapp v Ohio overruled Wolf v Colorado) Of course I agree with the Court that the Fourteenth Amendment prohibits activities which are proscribed by the search and seizure clause of the Fourth Amendment....Quite apart from the blanket of application of the Bill of Rights to the States, a devotee of democracy would ill suit his name were he to suggest that his home's protection against unlicensed governmental invasion was not "of the very essence of a scheme of ordered liberty." Palko v Connecticut, 302 U.S. 319, 325. It is difficult for me to understand how the Court (United States Supreme Court) can go this far and yet be unwilling to make the step which can give some meaning to the pronouncements it utters.

Imagination and zeal may invent a dozen methods to give content to the commands of the Fourth Amendment. But this Court is limited to the remedies currently available, it cannot legislate the ideal system. If we would attempt the enforcement of the search and seizure clause in the ordinary case today, we are limited to three devises; judicial exclusion of the illegally obtained evidence; criminal prosecution of violators; and civil action against violators in the action of trespass."

A criminal act of theft, and the subsequent element to prove the act of theft, is based on the fourth amendment and the right of the people to be free from "unreasonable search and

seizure". The defendants stole the plaintiff's voice by illegally recording conversations.

In Mapp v Ohio, the Court decided the issue regarding the illegal search and seizure of persons extended to the states and denied the admissibility of evidence illegally obtained. This ruling, is the basis that granted the Honorable Judge Geoffrey Wilson the right to redact the three pages before the court that stipulate, clearly and unequivocally, that illegally obtained evidence, including that of recordings, cannot be used in any court in the United States. Congress followed up by constructing public law to enforce and supplement the decision in Mapp v Ohio.

Justice Clark stated in Mapp:

"Today we once again examine Wolf's constitutional documentation of the right to privacy free from unreasonable state intrusion, and, after its dozen years on our books, are led by it to close the only courtroom door remaining open to evidence secured by official lawlessness in flagrant abuse of that basic right, reserved to all persons as a specific guarantee against that very same unlawful conduct. We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."

Justice Clark further opined in Mapp:

"Since the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth [Amendment], it is enforceable against them by the same sanction of exclusion as is used against the Federal Government. Were it otherwise, then just as without the Weeks rule the assurance against unreasonable federal searches and seizures would be a "form of words." Valueless and undeserving of mention in a perpetual charter of inestimable human liberties, so too, without that rule the freedom from state invasions of privacy would be so ephemeral and so neatly severed from its conceptual nexus with the freedom from all brutish means of coercing evidence as not to merit this Court's high regard as a freedom "implicit in the concept of ordered liberty" . . . To hold otherwise is to grant the right but in reality to withhold its privilege and enjoyment."

"Rights and remedies, legal or equitable, provided by statutes of states to be pursued in state courts could be enforced and administered in federal courts" Williams v Crabb (1902, CA7 Ill) 117 F 193, cert den (1902) 187 US 645, 47 L Ed 347, 23 S Ct 845; Pierce Petroleum Corp v Empire Gas & Fuel Co. (1927, CA5 Tex) 17 F2d 758.

"Governmental entities, including municipality, may be liable under 18 USC §2520" Adams v Battle Creek (2001, CA6 Mich) 250 F 3d 980

"While Congress apparently did not intend to provide federal remedy for persons aggrieved by personal acts of their spouses committed within marital home, gross invasion of individual's privacy by private detective agencies, law firms, and other unknown persons, whether instigated by spouse or not, was not within statutory proscription; husband had civil cause of action under 8 USCS §2520 against wife who conspired with detective agency to install electronic wiretapping device upon telephone line used by husband at marital home for purpose of eavesdropping upon and intercepting husband's private telephone conversations with his attorney, and who thereafter gave these recordings to law firms for use in legal matters; doctrine of interspousal immunity did not bar husband from maintaining action against wife where there was not consideration of preserving marital unity and tranquility and preventing collusive suits between husband and wife to detriment of third party since whatever minimal marital felicity existed, if any, between husband and wife, either during time in which wiretap was actually operating or after discovery of installation of such wiretap, could not reasonably be subject of public interest to extent that otherwise valid cause of action would be barred." Remington v Remington (1975, ED Pa) 393 F Supp 898

"Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established, in certain classes of cases, that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. The leading modern case for this principle is Mine Workers v. Gibbs, 383 U.S. 715, 16 L Ed 2d 218, 86 S. Ct 1130 (1966) In Gibbs, the plaintiff alleged the

defendants conduct violated both federal and state law.  The District Court, Gibbs held, had

original jurisdiction over the action based on the federal claims.  Gibbs confirmed that the District

Court had the additional power (though not the obligation) to exercise supplemental jurisdiction

over related state claims that arose from the same Article III case or controversy. Id., at 725, 16 L.

Ed. 2d 218, 86 S Ct 1130 ("The federal claim must have substance sufficient to confer subject

matter jurisdiction on the court…Assuming substantially of the federal issues, there is power in

federal courts to hear the whole")

     In Merrell Dow Pharmaceuticals Inc. v. Thompson et al., as next friends and guardians of

Thompson et al.  478 U.S. 804; 106 S Ct 3229; 92 L. Ed 2d 650; 1986 U.S. Lexis 143; 54

U.S.L.W. 5088


"Former Attorney General of United States is not entitled to absolute immunity claim for

unwarranted electronic surveillance of citizens" Forsyth v Kleindienst (1984, CA3 Pa) 729 F2d

267, aff'd in part and revd in part (1985) 472 US 511, 86 L Ed 2d 411, 105 S. Ct 2806, 2 FR Serv

3d 221.

     "Fact that no statutory language or legislative history indicates any Congressional intent

to impose 42 USCS §1983 restrictions on federal jurisdiction leads to conclusion that 28 USCS

§1331 provides jurisdictional basis for action against municipality for violations of Fourteenth

Amendment" Fox v Castle (1977, MD Pa) 441 F Supp 411

## DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO THE FREEDOM OF ASSOCIATION AS GUARANTEED BY THE UNITED STATES CONSTITUTION

     "Under the First Amendment to the Federal Constitution, freedom of association is

afforded constitutional protection in two distinct senses:

> (1) freedom of private association, under which the Federal Constitution protects
>
>     against unjustified government interference with an individual's choice to
>
>     enter into and maintain certain intimate or private relationships; and

(2) freedom of expressive association, under which individuals have the freedom
to associate for the purpose of engaging in protected speech or religious
activities. Board of Directors of Rotary International v Rotary Club of Duarte
481 US 537, 107 S. Ct 1940

In Roberts v United States Jaycees, the United States Supreme Court held that:

"There is implicit in the right to engage in activities protected by the First Amendment a
corresponding right to associate with others in pursuit of a wide variety of political, social,
economic, educational, religious, and cultural ends" Roberts v United States Jaycees, 468 US
609, 104 S Ct 3244.

Plaintiff opposes the dismissal of this action on the Defendants attempt to claim that
Plaintiff failed to state a claim upon which a relief can be granted under 12 (b) (6).

"Reviewing standing issue under 1964 ( c ) to dismiss pursuant to Rule 12 (b) (6) may be
granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them
in the light most favorable to plaintiff, plaintiff is not entitled to relief" In re Burlington Coat
Factory Sec. Litig., 114 F 3d 1410, 1420 (3d Cir. 1997) (citing Bartholomew v. Fischl, 782 F. 2d
1148, 1152 (3d Cir. 1986)."

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is
entitled to offer evidence to support the claims" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232,
236, 94 S. Ct. 1683, 1686 (1974)   Plaintiff has provided evidence relative to support the
complaints, and the allegations are in fact, true.

## Applicability of State Law in Federal Courts

"The laws of the several states, except where the Constitution or treaties of the United
States or Acts of Congress require or provide, shall be regarded as rules of decision in civil
actions in the courts of the United States, in cases where they apply.  28 U.S.C. §1652. The word
"laws," as used in the phrase "laws of the several states" in this provision, was construed in an

1842 decision of the United States Supreme Court to mean the state statutes, as interpreted by the state courts, and long established local customs having the force of laws, and as having no reference to the decisions of state courts on nonstatutory or common law. Swift v Tyson (1842) 41 U.S.1, 16 Pet 1, 10 L. Ed. 865. According to this view, federal courts were not bound by state court decisions in matters of general jurisprudence. Swift, however, was overruled by the United States Supreme Court in the landmark case of Erie R. Co. v Tompkins (1938) 304 U.S. 64, 82 L. Ed 1188, 58 S. Ct 817. In this case it was held that, except as to matters governed by the Federal Constitution or Acts of Congress, the law to be applied in any case is the law of the state and that the phrase "the laws of the several states" referred not only to state law as enacted by the state legislature, but to the law of a state as declared by its highest court, whether the law thus declared is local in visions, the requirements of a cause of action, the determination of damages, the availability and applicability of particular defenses, the power and extent of the jurisdiction of state courts, and certain other matters." Federal Trial Handbook, 3rd Edition, Hunter, Robert S., 1993, pg 13.

The Federal Trial Handbook, pg 1, states:

"There is a vast, interwoven network of laws, rules, practices, and customs that govern the trial of cases in federal courts. The *most basic of these is the Federal Constitution*...Federal Courts are bound by the written decisions of the United States District Courts, the Federal Judicial Circuit Courts, and the United States Supreme Court."

The defendants violated Plaintiff's most fundamental rights, rights secured by the Constitution of the United States; rights furthermore secured by 229 years of judicial decisions that followed the Constitution of the United States. Notwithstanding that American law, while based on interpretation of the Constitution, sought guidance from the Laws of England, known as the Common Law. The defendants herein named, violated the most fundamental document, the United States Constitution.

"One of the primary considerations in determining whether federal courts should fashion federal law or merely adopt state law is the degree of need for national uniformity." (Air Disaster at Lockerbie (1991, CA2 NY 928 F2d 1267.

This cause of action transcends beyond the boundaries of Massachusetts. It is a federal concern when officers of the court, such as Evan Ehmann, Licsw fail to enforce the laws in place, wherein laws are disregarded and violated for an ulterior purpose. When plaintiff's rights were violated by the illegal recording of plaintiff's property, plaintiff's voice, the defendants failed to abide to the precepts and embodied in the United States Constitution. In essence, the three defendants, not only violated plaintiff's constitutional rights, they violated their oath to the allegiance of the United States Constitution itself. For years, students at grade schools have sworn to the following statement:

"I pledge allegiance, to the flag, of the United States of America, and to the republic for which it stands, one nation, under god, indivisible, with liberty and justice for all."

The defendants, with proper discovery, is one way or another, have sworn to abide by the principles of the United States Constitution. Discovery is relevant and necessary.

## THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The progress of the law through the first half of this century may be traced in the following series of articles: Bohlen, Right to Recover for Injury Resulting from Negligence without Impact, 1902, 41 Am.L.Reg.,N.S.,141; Throckmorton, Damages for Fright, 1921, 34 Harvard Law Review 260, 57 Am. L. Rev. 828, 153 L.T. 24, 89; Goodrich, Emotional Disturbance as Legal Damage, 1922, 20 Michigan L. Rev. 497 See Preston & Keeton, Tort Law, pg.55 footnote 1 with additional citations not herein referenced.

"It has gradually become recognized that there is no magic inherent in the name given to a tort, or in any arbitrary classification, (See Smith, Torts without Particular Names, 1921, 69 U.Pa.L.Rev.91; Winfield, The Foundation of Liability in Tort, 1927, 27 Col. L. Rev. 1), and that the infliction of mental injury may be a cause of action itself." Ibid, pg.57

The classic article on the subject is Magruder, Mental and Emotional Disturbance in the Law of Torts, 1936, 49 Harvard Law Review 1033, See also Prosser, Intentional Infliction of Mental Suffering: A New Tort, 1939, 37 Michigan L. Rev. 874; Vold, Tort Recovery for Intentional Infliction of Emotional Distress, 1939, 18 Neb. L. B. 222

"The Intentional Infliction of Emotional Distress differs from the subtle and the outrageous. Accordingly, it is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities, or threats which are considered to amount to nothing more than mere annoyances. (Ibid, pg 57 profanity, obscenity or abuse: Brooker v Silverthorne, 1919, 111 S.C. 553, 99 S.E. 350; Ex parte Hammet, 1953, 259 Ala. 240, 66 So. 2d 600; Halliday v Cienkowski, 1939, 333 Pa. 123, 3 A. 2d 372; Atkinson v Bibb Manufacturing Co., 1935, 50 Ga. App. 434, 178 S.E. 537; Johnson v General Motors Acceptance Corp., 5th Cir. 1955, 228 F. 2d 104. See for aggravation or for insults, Slocum v Food Fair Stores of Florida, Inc., Fla. 1958, 100 So. 2d 396. See for indignities or threats, Taft v. Taft, 1867, 40 Vt. 229; Stratton v Posse Normal School of Gymnastics, 1928, 265 Mass. 223, 163 N.E. 905."

Preston & Keeton pg. 59, with emphasis on footnotes on 42, 43, and 44:

"In special situation of extreme misconduct, recovery is allowed. The leading case which first broke through the shackles of the older law was Wilkinson v. Downton, 1897, 2 Q.B.D., in which a practical joker amused himself by telling a woman that her husband had been smashed up in an accident and was lying at The Elms at Leytonstone with both legs broken, and that she was to go at once in a cab with two pillows to fetch him home. The shock to her nervous system produced serious and permanent physical consequences, which at one time threatened her reason, and entailed weeks of suffering and incapacity. The court obviously had no love for the defendant; and as in many other hard case, the enormity of the outrage overthrew the settled rule of law." Preston & Keeton, pg. 60

"As other outrageous cases began to accumulate, the courts continued to struggle to find some familiar and traditional basis of liability; and when it was possible without too obvious pretense, the recovery was rested upon a technical assault, battery, false imprisonment, trespass to land, nuisance, or invasion of the right of privacy. Gradually too many cases appeared in which no such traditional ground could be discovered; and somewhere around 1930 it began to be recognized that the intentional infliction of mental disturbance by extreme and outrageous conduct constituted a cause of action in itself" Preston & Keeton, pg.60 and Brents v Morgan, 1927, 221 Ky. 765, 299 S.W. 967.

"The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests. The result is something very like extortion. The leading case is an English one, Janvier v. Sweeney, 1919, 2 K.B. 316. Preston & Keeton, pg 62

"Still another basis on which extreme outrage can be found is the defendant's knowledge that the plaintiff is especially sensitive, susceptible, and vulnerable to injury through mental distress at the particular conduct." Braun v. Craven, 1898, 175 Ill. 401, 51 N.E. 657.

In Restatement of the Law, 1948, Supp., Torts, §46, Comment g:

"In short, the rule stated in this section imposes liability for intentionally causing severe emotional distress in those situations in which the actor's conduct has gone beyond all reasonable bounds of decency. The prohibited conduct is conduct which in the eyes of decent men and women in a civilized community is considered outrageous and intolerable. Generally, the case is one in which the recitation of the facts to an average member of the community would arose his resentment against the actor and lead him to exclaim 'Outrageous!'" Preston & Keeton, pg 60, footnote 54

"On the facts of all these cases, it would appear that there was a very high degree of probability that the mental disturbance would follow, and that the defendant proceeded in

Memorandum of Law in Opposition to Dismiss the Complaint
21

conscious and deliberate disregard of it, so that the defendant's conduct would properly be called willful, wanton or reckless" Preston & Keeton, pg. 65.

In Neville v. Gile, 174 Mass. 305, 306, 54 N.E. 841 (1899) it was alleged that plaintiff "suffered physically as well as mentally, and has been distressed in body and mind."

In Clark, Law of Domestic Relations, §12.3, at 663 (2d ed. 1987) a plaintiff could seek compensation for "humiliation, embarrassment, mental anguish, and loss of consortium."

As the Appeals Court noted in Quinn v. Walsh, 49 Mass App. Ct. 696; 732 N.E. 2d 330; 2000 Mass. App. Lexis 565 (2000):

"By the mid 1950's, the common law "heart balm" torts were generally expressed in only two cause of action, the tort of alienation of affection and criminal conversation. See, e.g. Ross v. Nourse, 330 Mass 666, 116 N.E.2d 323 (1953). In Doe v. Doe, 378 Mass. 202, 203, 390 N.E. 2d 730 (1979), "the continuing validity of the torts of alienation of affections and criminal conversation," by judicial determination was left to another day, which never dawned. The torts were abolished by statute six years later."

Does the abolishment of state statute prevent this court from ruling on the merits of regarding the tort of alienation of affection in light of Marbury v. Madison?

The fact is, without our system of government, and the judicial branch, the citizens of the United States, the citizens of the Commonwealth of Massachusetts, would have wrongs and injuries perpetrated against them, without recourse. The framers of the Constitution gave the people of the United States, not only the checks and balances in the Constitution, but the means to remedy wrongs by use of the Constitution. This remedy has been afforded the judiciary with the means to reason right from wrong and good from bad, and to determine the legality of issues based upon 200 years of precedent established by the Constitution of the United States.

While ours is not a perfect government, it embodies Common Law, English Law, and principles of democracy to guarantee that the rights of the minority shall not be minimized,

quashed or deprived.

This plaintiff seeks redress of grievances for the causes of action herein described in this complaint, yet asks this court to look back, with insight and wisdom, with respect to the tort of alienation of affections, based on Marbury v. Madison: "every wrong there must be a remedy".

Prosser & Keeton suggested that the actions of alienation of affections were "peculiarly susceptible to abuse...It is notorious that they have afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement." Prosser & Keeton §124, at 929. What if the alienation is not directly between current spouses, and there is no blackmail or extortion involved? What if it involves one parent's (defendant Mary Jane Stern, parent A) various 'tools of the trade', such as the illegal wiretapping of a former spouse, to denigrate, demoralize and demean the other parent's (plaintiff Scott Stern, parent B) relations with minor children.?

What if this former spouse (parent A), employs illegal activities, violates United States Constitutional rights of the targeted parent (parent B), and, in the process, negatively influences the children to deny such activity as factual, in order to have an unfair advantage over the other parent (parent B), violating due process, privacy, and the unreasonable search and seizure principles of the United States Constitution by utilizing three minor children to commit and hide such illegal, unethical and immoral behavior from the targeted parent (parent B)?. Does the parent (parent A) that utilizes the children in such a way exemplify the embodiment of good parenthood? It would be incredulous to say that this behavior would not amount to flagrant violations of all the moral and ethical standards our society embodies in child-rearing and parenthood. Certainly, the act and actions, by the defendants and their illegal behaviors should be considered as to rise to the level "alienation of affections?"

The parent that commits such an act against another parent has violated the "body politic" as is stated in the Preamble of the Massachusetts Constitution:

The body politic is formed by a voluntary association of individuals; it is a social

Memorandum of Law in Opposition to Dismiss the Complaint

compact, by which the whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good. It is the duty of the people, therefore, in framing a constitution of government, to provide for an equitable mode of making laws, as well as for an impartial interpretation, and a faithful execution of them; that every man may, at all times, find his security in them."

Was it equitable and constitutional, on the part of the legislature of the Commonwealth of Massachusetts, to eliminate the tort of alienation of affections because of the possibility of blackmail or extortion between spouses when the tort had ramifications extending beyond a direct link between two people, as a married couple or a couple that co-habited with each other While there is a link, it is not the "usual and customary" link associated with tort of alienation of affections. That the tort should not have been abolished because the statute allowed a "remedy" to redress "all injuries and wrongs" perpetrated by individuals such as the defendants. The legislatures act of should be considered unconstitutional is clear. The abolishment of the statute abrogates and defies the principle of Marbury v Madison, 1 Cranch 137; 2 L Ed 60 (1803)

"That the people have an original right to establish, for their future government, such principles, as, in their opinion, shall most conduce tot heir own happiness is the basis on which the whole American fabric has been erected. The exercise of this original right is a very great exertion; not can it, not ought it, to be frequently repeated. The principles, therefore, so established, are deemed fundamental...the constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it...If the former part of the alternative be true, than a legislative act contrary to the constitution is not law; if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own natural illimitable...It is also not entirely unworthy of observation, that in declaring what shall be the supreme law of the land, the constitution itself is first mentioned; and not the laws of the

United States generally, but those only which shall be bade in pursuance of the constitution, have that rank...Thus, the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void; and that courts, as well as other departments, are bound by that instrument"

Thus the abolishment by the Massachusetts legislature repealing the statute for the alienation of affections, in light of Marbury v Madison, was "repugnant to the Constitution of the United States" Plaintiff has cause of action, by the defendants illegally wiretapping plaintiff's conversations, to alienate the affections of the three minor children, which is also "repugnant to the Constitution of the United States"

Massachusetts Courts have found, in Vittands & others v. Sudduth, 49 Mass. App. Ct. 401; 730 N.E. 2d 325; 2000 Mass. App. Lexis 468 that:

"tortuous intentional infliction of emotional distress is a claim for interference with an individual" Nolan & Sartario, Tort Law §19 (1989)

The court held, in Vittands, the following elements comprised the tort of intentional infliction of emotional distress: (1) that the actor intended to inflict emotional distress or that she knew or should have known that emotional distress was the likely result of [the] conduct, (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' (3) that the actions of the defendant were the cause of the plaintiff's distress, and (4)that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable [person] could be expected to endure it." Conway v. Smerling, 37 Mass. App. Ct. 1, 8, 635 N.E.2d 268 (1994), quoting from Agis v Howard Johnson Co., 371 Mass. 140, 144-145, 355 N.E.2d 315(1976). Sena v Commonwealth, 417 Mass. 250, 264, 629 N.E.2d 986 (1994).

Generally, this condition is satisfied if the individual's conduct would constitute "state action" for the purposes of the fourteenth amendment.  See Lugar v. Edmondson Oil Co.,

Memorandum of Law in Opposition to Dismiss the Complaint

25

457 U.S. 922, 935 (1982). "If the challenged conduct of respondents constitutes state action as

delimited by our prior decisions, then that conduct was also action under color of state

law and will support a suit under 1983"; See also Griffin v. Maryland, 378 U.S. 130, 135 (1964)

"action of one who possesses state authority and purports to act according to that

authority is state action even if not authorized under state law, and may violate the equal

protection clause."

Judge Posner, in Bowers 686 F. 2d at 618 declared that:

"if the state puts a man in a position of danger from private persons and then fails to

protect him, it will not be heard to say that its role was merely passive; it is as much an active

tortfeasor as if it had thrown him into a snake pit." This "position of danger" test

exactly as a "special relationship" to expose the state to section 1983 liability for failure to act.

The Defendant, Evan Ehmann, Licsw, was appointed by the Commonwealth of Massachusetts

Probate and Family Court Judge Geoffrey Wilson. The Guardian Ad Litem's role is

Investigatory and regulated by the standards for category F Guardian Ad Litem investigators.

The Guardian Ad Litem, a state actor, by appointment of the Commonwealth of Massachusetts

Probate and Family Court Judge, was not, granted the right by or from the court to violate the

plaintiff's civil rights. Thus not only did the defendant, Evan Ehmann, as Guardian Ad Litem

violate the constitutional rights of the Plaintiff under 42 U.S.C. §1983, which grants the plaintiff a

federal cause of action, the Guardian Ad Litem, in conspiracy with the other defendants, utilized

recordings provided by the defendant, Mary Jane Stern and the defendant, Gary Matteson, by and

use of the ownership of the residence and telephone, whereupon the illegally seized recordings

took place, also violated the civil rights of the three minor children.  Plaintiff sought to

communicate with his three minor children, a federal cause of action against the Defendant Evan

Ehmann, as an appointed "officer" of the Commonwealth of Massachusetts, in proceedings of the

Probate and Family Court, Hampshire County, Massachusetts extends to the other two defendants

as well.

"42 U.S.C. §1983 of the Civil Rights Act of 1871 renders individuals

in state government liable when they deprive citizens of "any rights, privileges or immunities

secured by the Constitution and laws of the United States"

"42 U.S.C.S. §1983 imposes liability for violations of rights protected by Federal

Constitution, not for violations of duties of care arising out of tort law" Baker v McCollan

(1979) 443 US 137, 61 L Ed 2d 433, 99 S Ct 2689.

"In action under 42 U.S.C.S. § 1983 first inquiry is whether plaintiff has been deprived,

within meaning of §1983, of right secured by Constitution and laws of United States." Martinez v

California (1980) 444 US 277, 62 L Ed 2d 481, 100 S Ct 553, reh den (1980) 445 US 920, 63 L

Ed 2d 606, 100 S Ct 1285.

The act of illegally tape recording the plaintiff with the three minor children eroded the

ability to be secure in the three minor children's private conversations with their parent, this

plaintiff. The defendants, not only violated the plaintiff's rights, they violated the rights of the

three minor children. In short, the three defendants are criminals, and should be prosecuted as

criminals. Plaintiff's pleading should, for all intensive purposes, be considered factual and real,

not "alleged" as defendants counsel wish to aver to this honorable court. Plaintiff has provided

this court with evidence to show that a violation of federal law and state law has been committed

by the act and actions of the three defendants, individually, and collectively.

Under Massachusetts Rules of Civil Procedure 12(b)(6), 365 Mass. 754 (1974), "the

allegations of [a] complaint, as well as such inferences as may be drawn therefrom in the

plaintiffs favor are to be taken as true." Nader v. Citron, 372 Mass. 96, 98, 360 N.E. 2d 870

(1977), quoting from Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

"There is no requirement that the plaintiff's complaint state the relevant facts with completeness

or precision." Ahern v. Warner, 16 Mass. App. Ct. 223, 226 n.2, 450 N.E. 2d 662 (1983), "Our

analysis must be based upon an indulgent reading of the complaint, Haggerty v. Globe Newspaper Co., 383 Mass, 406, 409, [*334] 419 N.E. 2d 844 (1981).

Plaintiff provided the honorable Judge Geoffrey Wilson with the necessary elements for the redaction of certain illegally obtained findings within the report of the Guardian Ad Litem of November 29, 2004. In light of this, in light of the fact that plaintiff has provided this court with the police report from the North Adams Police Department, and the three pages of the Guardian Ad Litem's report, the allegations should not be considered "alleged" but rather, "may be drawn therefrom in the plaintiff's favor are to be taken as true."

The Guardian Ad Litem, as a state actor, violated the Constitution of the United States, and the laws of the United States. In addition, the Guardian Ad Litem, is not, above the constitution of the United States. The Guardian Ad Litem is not above the Constitution of Massachusetts, Article V:

"All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them."

Massachusetts Article VI:

"No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge, is absurd and unnatural."

Massachusetts Article XI:

"Every subject of the Commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely; and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

Massachusetts Article IIV, in part states:

"Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions."

Massachusetts Article VII:

"Government is instituted for the common good; for the protection, safety, prosperity, and happiness of the people; and not for the profit, honor, or private interest of any one man, family or class of men; Therefore the people alone have an incontestable, unalienable, and indefeasible right to institute government; and to reform, alter, or totally change the same, when their protection, safety, prosperity and happiness require it."

## ALIENATION OF AFFECTIONS AND PARENTAL ALIENATION SYNDROME

The act of alienating children away from one parent is termed Parental Alienation Syndrome. It has been well-documented and is recognized in twenty states, and as the Army Lawyer noted in March, 2002:

"In its simplest terms, parental alienation occurs when one parent engages in a campaign to drive a wedge between a child and the targeted parent. Attempts at parental alienation may be as subtle as a persistent snide remarks, or as blatant as false allegations of sexual abuse."
Dr. Richard Gardner coined the phrase "Parental Alienation Syndrome" in 1985 in the context of false child abuse allegations against the non-custodial parent. The Army Lawyer, in March 2002 further noted that:

"Proponents of PAS currently recognize the syndrome as potentially encompassing four different criteria areas; access and contact blocking, unfounded abuse allegations, deterioration in relationship since separation, and intense fear reaction by children." Plaintiff hereby annexes to this complaint the document as Exhibit "7" Does DSM-IV have equivalents for the Parental Alienation Syndrome (PAS) Diagnosis, by Richard A. Gardner, M.D. Department of Child

Psychiatry, College of Physicians and Surgeons Colombia University, New York, New York and

Doerman v. Doerman, Court of Appeals of Ohio, Twelfth Appellate District, Butler County

The court held in Ferriter v. Daniel O'Connell's Sons, Inc., 381 Mass. at 510

that:

"a minor child has a strong interest in his parent's society."

The three minor children had a strong interest in a relationship with their father, the

plaintiff, prior to the illegal actions of the defendants. Through the act of illegally wiretapping

the plaintiff with the three minor children, which violated federal statutory law, and caused a

reaction from the three minor children, which deprived the plaintiff with the "society and

companionship" of the three minor children, by the defendants "alienating the affections" of the

three minor children, over the course of eight months by the defendants illegal act and actions, the

plaintiff maintains a cause of action under federal constitutional principles and federal law

against the defendants herein named.

## HOW 42 USCS §1983 APPLIES TO THE DEFENDANTS MARY JANE STERN AND GARY MATTESON

Surely our checks and balances of government affords our judiciary the equitable power

to remedy all wrongs, even if statute has not been enacted or has been abolished.

Plaintiff argues that the act and actions of the defendants illegal activities caused a

reverse transitive theory of law. In using transitive properties, in logic and theory, if A = B, and

B = C, then A = C. This is fundamental. Defining the letters would be as follows: A =

defendant Mary Jane Stern; B = defendant Gary Matteson; C = defendant Evan Ehmann, Licsw.

Since A and B cohabitate with each other, residing in the same address, and both are over

the age of 18 to make informed, legal decisions, and decided, individually and collectively, to

intercept the conversations of plaintiff and the three minor children, upon procuring illegally

recording equipment to attach to the phone of the defendant Gary Matteson, at the residence of

the defendant Gary Matteson, which also is the abode of the three minor children, A = B; when A

proceeded to deliver the recording to C, which is the defendant Guardian Ad Litem, Evan Ehmann, Licsw, it would thus extend to B as well.

The three defendants acted in a manner consistent with conspiracy to commit a crime and violated the plaintiff's property rights under 18 USCS §2510 et seq.;18 USCS §1983; 18 USCS 242.

The reverse is true of the aforementioned transitive properties. Thus, reversing the above transitive properties, before Evan Ehmann, Licsw, even wrote of the illegal recordings in the Guardian Ad Litem's report, *by receiving the stolen property, the illegally procured tape, at the residence of the defendants A and B, plaintiff's deprivation of rights thus extended the arm of the state to include the defendants A and B under 42 USCS §1983.*

## CONCLUSION

Wherefore, for the aforementioned arguments herein noted above, for the reasoning set forth in this memorandum, the plaintiff prays that this court shall retain federal jurisdiction of this matter in order to secure the rights of the plaintiff, by and from the violations of the defendants, and all applicable federal law should apply to the defendants, not withstanding any Massachusetts Constitution and state law violations, adjudicated in a separate action, by the State Superior Court of Massachusetts.

Most respectfully submitted this 28 day of September, 2005

Scott Stern
Pro-Se Plaintiff
400 West Main Street
North Adams, Massachusetts 01247

# **CERTIFICATE OF SERVICE**

I, Scott Stern, Pro-Se Plaintiff, in this action of Stern v.
Stern, et al United States District Court, docket No 05-30082
MAP, certify that I have caused a copy of the foregoing document:

Plaintiff's Memorandum of Law in Opposition to Dismiss

to have been delivered, postage prepaid, to the defendants at
their respective addresses on September 28, 2005.

Andrus & Wyllie, P.C.
Attorney Erin Wyllie
15 Center Court
Northampton, Massachusetts 01060

The Law Offices of Edward Berlin
Attorney Robert E. Young
278 Main Street, Suite 205
Greenfield, Massachusetts 01301-3302

Long & Holden
100 Summer Street
Boston, Massachusetts 02110

To be delivered, by hand delivery, by the plaintiff, to the
United States District Court, 1550 Main street, Springfield,
Massachusetts on September 28, 2005.

_September 28, 2005_                    _Scott Stern_
Date of Mailing                         Signature

Scott Stern
Pro-Se Plaintiff
400 West Main Street
North Adams, Massachusetts 01247