United States District Court
District of Massachusetts
Western Division

Springfield, Massachusetts                    Civil Action No.05-30082 MAP

Scott Stern,                              )
       Plaintiff,                     )
   vs.                                    )
                        )  Complaint against Defendants for
Mary Stern, Gary Matteson, and Evan    )  Violations of M.G.L. Chapter 272 §99;
Ehmann                                 )  M.G.L. Chapter 265 §43A; M.G.L. Chapter 274,
                                       )  Section 2 and Section 7; M.G.L. Chapter 12,
       Defendants                     )  Section 11H and Section 11 I;
                                       )  M.G.L. Chapter 214 §1B;
                                       )  Massachusetts Constitution
                                       )  Articles I(CVI), X, and XIV
                                       )  United States Constitution Fourth Amendment
                                       )  Unreasonable Search and Seizure
                                       )  United States Constitution First Amendment
                                       )  Freedom of Association
                                       )  United States Federal Code of Regulations
                                       )  18 U.S.C. §2510, §2511, §2512, §2515
                                       )  Title III of Omnibus Crime Control and Safe
                                       )  Streets Act of 1968
                                       )  Title 42 U.S.C. §1983, Title 18 U.S.C. §242
                                       )
                                       )
                                       )
                                       )
                                       )
                                       )
                                       )
                                       )
                                       )
                                       )
                                       )
_____)

## SUPPLEMENT TO MEMORANDUM OF LAW IN OPPOSITION TO DISMISS THE COMPLAINT

## PREFACE

On September 28, 2005, Plaintiff received Defendant Evan Ehmann's answer to the complaint. Plaintiff motioned this court to allow Plaintiff to supplement plaintiff's Opposition to dismiss in a memorandum of law. This court granted plaintiff until October 24, 2005 to submit the supplemental memorandum, as motioned on September 28, 2005

.

## FEDERAL LAW AND CODES

"[The] purpose of Title III of Omnibus Crime Control and Safe Streets Acts of 1968, 18 USCS §2510-2522, is to prohibit all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials, and statute effectuates this purpose, in part, by providing for civil damages action for victims of illegal wiretapping, 18 USCS §2520. (Glazner v. Glazner (2003, CA11 Ala) 347 F3d 1212, 16 FLW Fed C 1199).

"Various federal officials including former President could be liable under 18 USCS §2520 if plaintiff could demonstrate that there was no reasonable national security interest involved." (Smith v. Nixon (1979, App DC) 196 US App DC 276, 606 F2d 1183, cert den (1981) 453 US 912, 69 L Ed 2d 997, 101 S Ct 3147, reh den (1981) 453 US 928, 69 L Ed @d 1024, 102 S Ct 892)

"Former Attorney General of United States is not entitled to absolute immunity claim for unwarranted electronic surveillance of citizens." (Forsyth v Kleindienst (1984, CA3 Pa) 729 F2d 267, aff'd in part and revd in part(1985) 472 US 511, 86 L Ed 2d 411, 105 S Ct 2806, 2 FR Serv 3d 221.)

The guardian ad litem, Evan Ehmann, Licsw, never procured authorization from the Hampshire Probate and Family Court to authorize the illegal wiretapping of the plaintiff and

plaintiff's three minor children. The honorable Judge, Geoffrey Wilson, has, pursuant to the federal code of regulations, redacted the approximate three pages of written statements, that were procured illegally and without authorization, by the defendant, Evan Ehmann; hand delivered from the defendant Mary Jane Stern, in the residence of Gary Matteson, of a phone line leased to the defendant Gary Matteson, to the defendant Evan Ehmann. The relevant Code of Federal Regulations 18 USCS §2511 states:

"Interception and disclosure of wire, oral, or electronic communications prohibited:

1) Except as otherwise specifically provided in this chapter [18 USCS §2510 et seq.] any person who—
    a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
    b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communications when—
        i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
        ii) such device transmits communications by radio, or interferes with the transmission of such communication; or …

    c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
    d) intentionally uses, or endeavors to use, the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; …

        shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

If former Presidents, and the former Attorney General of the United States could be subject to liability under 18 USCS §2510 et seq., it stands to reason that the defendant Evan Ehmann, Licsw could be liable as well. The Code of Federal Regulations clearly states the term "any person" in the aforementioned paragraph. Thus, this intentional act of Congress, to include "any person" did not preclude that former Presidents, former Attorney General's or the Guardian Ad Litem, defendant Evan Ehmann, Licsw, could be immune from suit for violating

to apply to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2516 of this chapter, these individuals are:

"The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division designated by the Attorney General"

18 USCS §2516 does not list the occupation of Guardian Ad Litem or Licsw within the listed occupations to apply to a Federal judge for application to conduct illegal wiretapping, such as the defendant Evan Ehmann conducted with the co-defendants, Mary Jane Stern and Gary Matteson. The other occupations listed and authorized under §2516 (2) include the "principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications". Under subsection §2516 (3), "any attorney for the government (as such term is defined for the purposes of the Federal Rules of Criminal Procedure) may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant, in conformity with section 2518 of this title [18 USCS 2518]...*when such interception may provide evidence of any Federal felony*."

Under subsection ( c ) of § 2516, the Code of Federal Regulations does not authorize a Guardian Ad Litem or Licsw, like the defendant Evan Ehmann, or private citizens such as defendants Mary Jane Stern or Gary Matteson, the right and authorization to apply to a Federal judge for application for investigation relative to child custody in probate and family court matters in the Commonwealth of Massachusetts. Congressional intent of enacting the statute to read "any person" was inclusive of the Guardian Ad Litem Evan Ehmann. The plaintiff, your moving party, was not under investigation for any federal crime prior to, during or after the

illegal, wanton, reckless and negligent actions of the defendants, which involved, in conspiracy with each other, the use and tactic to wrongfully utilize the three minor children to aid in their conspiracy against the rights of your plaintiff; rights which are secured by the United States Constitution, the Massachusetts Constitution and both Federal and State laws and codes. (History: Added June 19, 1968, P.L. (Public Law by the United States Congress) 90-351, Title III, §802, 82 Stat. 216; Oct 15, 1970, P.L. 91-452, Titles VIII, IX, XI §§810, 902(a), 1103, 84 Stat. 940, 947, 959; Jan 2, 1971, P.L. 91-644, Title IV, §16, 84 Stat. 1891, Nov. 6, 1978, P.L. 95-598, Title III, §314(h), 92 Stat. 2677; Oct. 6, 1982, P.L. 97-285, §§2(e), 4(e), 96 Stat. 1220, 1221, et al)

## THE LAWS OF THE STATES ARE RULES OF DECISIONS IN FEDERAL COURT

Under the Code of Federal Regulations, 29 CFR 18.501:

"§18.501 General Rule: Except as otherwise required by the Constitution of the United States, or provided by Act of Congress, or by rules or regulations prescribed by the administrative agency pursuant to statutory authority, or pursuant to executive order, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law."

## THE LAW OF THE COMMONWEALTH OF MASSACHUSETTS

The law of the Commonwealth of Massachusetts, Chapter 272 §99 states:

"A. Preamble.

The general court finds that organized crime exists within the commonwealth and that the increasing activities of organized crime constitute a grave danger to the public welfare and safety. Organized crime, as it exists in the commonwealth today, consists of a continuing conspiracy

among highly organized and disciplined groups to engage in supplying illegal goods and services. In supplying these goods and services organized crime commits unlawful acts and employs brutal and violent tactics. Organized crime is infiltrating legitimate business activities and depriving honest businessmen of the right to make a living.

The general court further finds that because organized crime carries on its activities through layers of insulation and behind a wall of secrecy, government has been unsuccessful in curtailing and eliminating it. Normal investigative procedures are not effective in the investigation of illegal acts committed by organized crime. Therefore, *law enforcement officials must be permitted to use modern methods of electronic surveillance, under strict judicial supervision, when investigating these organized criminal activities.*

*The general court further finds that the uncontrolled development and unrestricted use of modern electronic surveillance devices pose grave dangers to the privacy of all citizens of the commonwealth. Therefore, the secret use of such devices by private individuals must be prohibited. The use of such devices by law enforcement officials must be conducted under strict judicial supervision and should be limited to the investigation of organized crime. (Emphasis added)"*

The defendant, Evan Ehmann, a Licensed Social Worker, was not a "law enforcement official" and was not prescribed, authorized or permitted, by the Hampshire Probate and Family Court, the Honorable Judge Geoffrey Wilson, as a "law enforcement official" in order to conduct illegal acts and actions that were not permitted outside of his authority to investigate the issue of child custody of and about the plaintiff, Scott Stern, and the defendant, Mary Jane Stern, and their three minor children. The three minor children, individually and collectively, were illegally utilized contrary to the laws of the United States and the laws of the Commonwealth of Massachusetts to aid and abet the actions of the conspirators. Such procurement and use of illegally recorded conversations were not under the "strict judicial supervision" and was not

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

specifically sought "to the investigation of organized crime."

The law of the Commonwealth of Massachusetts further defines, in section B of the act:

"B. Definitions. As used in this section

1. The term "wire communication" means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception.

2. The term "oral communication" means speech, except such speech as is transmitted over the public air waves by radio or other similar device.

3. The term "intercepting device" means any device or apparatus which is capbable of transmitting, receiving, amplifying, or recording a wire or oral communication other than a hearing aid or similar device which is being used to correct subnormal hearing to normal and other than any telephone or telegraph instrument, equipment, facility, or a component thereof, (a) furnished to a subscriber or user by a communications common carrier in the ordinary course of its business under its tariff and being used by the subscriber or user in the ordinary course of its business; or (b) being used by a communications common carrier in the ordinary course of its business.

4. *The term "interception" means to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication*; provided that it shall not constitute an interception for an investigative or law enforcement officer, as defined in this section, to record or transmit a wire or oral communication if the officer is a party to such communication or has been given prior authorization to record the communication by such a party and if recorded or transmitted in the course of any investigation of a designated offense as defined herein.

5. The term "contents", when used with respect to any wire or oral communication, means any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication.

6. The term "aggrieved person" means any individual who was a party to an intercepted wire or oral communication or who was named in the warrant authorizing the interception, or who would otherwise have standing to complain that his personal or property interest or privacy was invaded in the course of an interception.

7. The term "designated offense" shall include the following offenses in connection with organized crime as defined in the preamble: arson, assault and battery with a dangerous weapon, extortion, bribery, embezzlement, forgery, gaming in violation of section seventeen of chapter two hundred and seventy-one of the general laws, intimidation of a witness or juror, kidnapping, larceny, lending of money or things of value in violation of the general laws, mayhem, murder, any offense involving the possession or sale of a narcotic or harmful drug, perjury, prostitution, robbery, subornation of perjury, any violation of this section, being an accessory any of the foregoing offenses and conspiracy or attempt to solicitation to commit any of the foregoing offenses.

8. The term "investigative or law enforcement officer" means any officer of the United States, a state or political subdivision of a state, who is empowered by law to conduct investigations of, or to make arrests for, the designated offenses, and any attorney authorized by law to participate in the prosecution of such offenses.

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

9. The term "judge of competent jurisdiction" means any justice of the superior court of the commonwealth.
10. The term "chief justice" means the chief justice of the superior court of the commonwealth.
11. The term "issuing judge" means any justice of the superior court who shall issue a warrant as provided herein or in the event of his disability or unavailability any other judge of competent jurisdiction designated by the chief justice.
12. The term "communication common carrier" means any person engaged as a common carrier in providing or operating wire communication facilities.
13. The term "person" means any individual, partnership, association, joint stock company, trust, or corporation, whether or not any of the foregoing is an officer, agent or employee of the United States, a state, or a political subdivision of a state.
14. The term "sworn" or "under oath" as they appear in this section shall mean an oath or affirmation or a statement subscribed to under the pains and penalties of perjury.
15. The terms "applicant attorney general" or "applicant district attorney" shall mean the attorney general of the commonwealth or a district attorney of the commonwealth who has made application for a warrant pursuant to this section.
16. The term "exigent circumstances" shall mean the showing of special facts to the issuing judge as to the nature of the investigation for which a warrant is sought pursuant to this section which require secrecy in order to obtain the information desired from the interception sought to be authorized.
17. The term "financial institution" shall mean a bank, as defined in section 1 of chapter 167, and an investment bank, securities broker, securities dealer, investment adviser, mutual fund, investment company or securities custodian as defined in section 1.165-12(c)(1) of the United States Treasury regulations.
18. The term "corporate and institutional trading partners" shall mean financial institutions and general business entities and corporations which engage in the business of cash and asset management, assent management directed to custody operations, securities trading, and wholesale capital markets including foreign exchange, securities lending, and the purchase, sale or exchange of securities, options, futures, wages, swaps, derivatives, repurchase agreements and other similar financial instruments with such financial institution.

The definitions of section B do not include the term "guardian ad litem" or "licensed social worker" for authorization to obtain permission from a judge of the superior court, in the opposite, the term *"person" means any individual...whether or not any of the foregoing is an officer, agent or employee of the United States, a state, or a political subdivision of a state."* This would include the defendant Evan Ehmann to be liable for his illegal act obtaining, procuring and utilizing the recording of the plaintiff's oral communications, with plaintiff's three minor children, through unlawful intercept, in conspiracy with the defendants Mary Jane Stern, and Gary Matteson, and published the communications in the Report of the Guardian Ad Litem, dated November 29, 2004 in the Hampshire Probate and Family Court, under docket no. 90-

D0490-D1. The Honorable Judge, Geoffrey Wilson, pursuant to the United States

Code, has ordered the redaction of the pages described in the Report of the Guardian Ad Litem

which is prima facie proof that a judge, in another jurisdiction, found the actions of the defendant

Evan Ehmann, Licsw, to be unauthorized, illegal, and in violation of the United States Code 18

USCS §2515:

"Prohibition of use as evidence of any wire or oral communications.

Whenever any wire or oral communication has been intercepted, no part of the contents

of such communication and no evidence derived therefrom may be received in evidence in any

trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency

regulatory body, legislative committee, or other authority of the United States, a State, or a

political subdivision thereof if the disclosure of that information would be in violation of this

chapter."

*The law of the Commonwealth, under chapter 272 §9, section C, Offenses states:*

*"Interception, oral communications prohibited.*

*Except as otherwise specifically provided in this section any person who—*

*Willfully commits an interception, attempts to commit an interception, or procures any*

*other person to commit an interception or to attempt to commit an interception of any wire or*

*oral communication shall be fined not more than ten thousand dollars, or imprisoned in the*

*state prison for not more than five years, or imprisoned in a jail or house of correction for not*

*more than two and one half years, or both so fined and given one such imprisonment.(Empasis*

*added)"*

Under section C, like that of the federal code, the term employed is "any person" and

"person" includes that of defendant Evan Ehmann, Licsw, "means any individual, partnership,

association, joint stock company, trust or corporation, whether or not any of the foregoing is an

officer, agent or employee of the United States, a State, or a political subdivision of a state."

Under subsection Q, Civil Remedy, of Chapter 272 §99:

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

10

"Any aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by this section or whose personal or property interests or privacy were violated by means of an interception except as permitted or authorized by this section shall have a civil cause of action against *any person who so intercepts, discloses or uses such communications or who so violates his personal, property or privacy interest, and shall be entitled to recover from any such person—*

1. *Actual damages but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1000, whichever is higher;*

2. *punitive damages; and*

3. *a reasonable attorney's fee and other litigation disbursements reasonably incurred. Good faith reliance on a warrant issued under this section shall constitute a complete defense to an action brought under this paragraph.*

## QUASI JUDICIAL IMMUNITY AND ABSOLUTE JUDICIAL IMMUNITY

Defense counsel avers to this court that the creature called "Quasi Judicial Immunity" should grant immunity to the defendant Evan Ehmann, Licsw the right to conduct illegal actions such as was committed, contrary to the laws of the United States, and the laws of the Commonwealth of Massachusetts. This is a flawed argument and proposition and should be summarily dismissed as inapplicable in light of statutory legislation by an act of Congress and the General Court of the Commonwealth which your moving party has submitted to this court.

"Apart from judicial immunity, Massachusetts law does not recognize any absolute common law immunity for public employees" Duarte v. Healy, 405 Mass. 43, 46, 537 N.E. 2d 1230 (1989). See Brealt v Chairman of the Board of Fire Commissioners of Springfield, 401 Mass. 26, 513 N.E.2d 1277 (1987)  Massachusetts law does recognize qualified immunity patterned after the federal qualified immunity under 42 USCS §1983, but that immunity applies

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

11

only to discretionary functions, not ministerial acts. Duarte v. Healy, 405 Mass at 46. See also

Cady v. Marcella, 49 Mass. App. Ct. 334, 339, 729 N.E. 2d 1125 (2000). Discretionary functions

are limited to "discretionary conduct that involves policy making or planning." Harry Stoller &

Co. v. Lowell, 412 Mass. 139, 141, 587 N.E. 2d 780 (1992). As the Supreme Judicial Act has

explained, "Governmental immunity does not result automatically just because the governmental

actor had discretion. Discretionary actions and decisions that warrant immunity must be based on

considerations of public policy." 412 Mass. at 143. Consequently, many decisions, such as

whether to remove a drunken motorist from the roadway, how to treat a patient in the emergency

room, the implementation of state police disciplinary policies, and the monitoring of a

probationer, have been deemed ministerial rather than discretionary for purposes of evaluating

qualified immunity. 412 Mass. at 143-144 and cases cited (Citation from Pat Doe, by her next

friend, Jane Doe, Plaintiff vs. John Yunits et. al., defendants 15 Mass L. Rep 278; 2001 Mass.

Super. Lexis 327)

The act and actions employed by the defendant Evan Ehmann, Licsw was not "policy

making or planning" and was, therefore, not "discretionary." Evan Ehmann, Licsw, as Guardian

Ad Litem, is not immune because he was acting as an officer of the Commonwealth by

conducting investigation relative to visitation of three minor children with the father, your

moving party, the plaintiff. To the contrary, governmental entities are liable, such as Evan

Ehmann, Licsw, individually, and as guardian ad litem, when:

"In Bettencourt v. Board of Registration in Medicine, 904 F. 2d 772 (1st Cir. 1990) t he

court explained that "there are some officials whose special functions require a full exemption

from liability." Id at 782 (quoting Butz v. Economou, 438 U.S. 478, 508, 57 L. Ed 2d 895, 98 S.

Ct 2894 (1977) (internal quotation marks omitted). "Such officials include, among other things,

judges performing judicial acts within their jurisdiction, prosecutors performing acts intimately

associated with the judicial phase of the criminal process, and certain 'quasi-judicial' agency

officials who, irrespective of their title, *perform functions essentially similar to those of judges or prosecutors*, in a setting similar to that of a court." Bettencourt, 904 F. 2d at 782 (emphasis in original) (internal citations and quotes omitted). Bettencourt involved a civil rights action brought by a physician whose medical license had been revoked by the Board of Registration in Medicine. After dismissing the non-monetary claims on Younger grounds, the Court determined whether the Board members were entitled to absolute judicial immunity by applying a three part test in Bettencourt:

> 1) *First, does a Board member [Guardian Ad Litem], like a judge, perform a a traditional "adjudicatory" function, in that he decides facts, applies laws, and otherwise resolves disputes on the merits (free from direct political influence?(Emphasis added)*
>
> 2) Second, does a Board member [Guardian Ad Litem], like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions?
>
> 2) Third, does a Board member [Guardian Ad Litem], like a judge, adjudicate Disputes against a backdrop of multiple safeguards designed to protect a [pro-se plaintiff; father seeking additional visitation of three minor children] constitutional rights?

The defendant Evan Ehmann, Licsw as a guardian ad litem, does not decide facts and apply laws, relative to the probate and cases they are assigned. They are not given the authority to decide visitation issues, but merely "recommend" in their report submitted to the court regarding the parties. Unlike the judge whom has the authority, the Guardian Ad Litem does not have authority to redact illegally obtained communications that have been published contrary to the laws of the United States. A guardian ad litem is not entitled to absolute immunity since the guardian ad litem's role is not adjudicatory in nature, and it does not entail "policy making or planning". The fact is, a guardian ad litem is assigned the case by the judge and does not sit, "like a judge" by performing adjudicatory functions. The guardian ad litem cannot hear arguments by plaintiffs and defendants, motions, nor does the guardian ad litem issue conclusions of law and findings of fact; the guardian ad litem does not "sit" in a position on a bench, before the parties, and does not have the authority to wear a black robe, like a judge! (Impersonation of a

judge is a crime in the Commonwealth of Massachusetts and all the contiguous fifty states.)

Under the Standards for Category F Guardian Ad Litem Investigators, published by the

Commonwealth of Massachusetts, The Trial Court, Probate and Family Court Department,

Honorable Sean M. Dunphy, Chief Justice:

"1.1 The GAL shall gather and report factual data to the court

The role of the Category F GAL investigator is to gather and report factual information
That will assist the court in making custody, visitation, or otherwise decisions related to
The welfare of a child.  Unless the appointing judge specifies otherwise, the GAL invest-
tigator's role is limited to gathering and reporting information to the court.  The GAL
may include recommendations in the report if the order of the court authorizes inclusion
of such recommendations.

COMMENTARY:

The court, not the GAL, decides legal issues and ultimately makes credibility
determinations and factual findings when facts are in dispute.  The GAL reports on facts
and avoids providing legal conclusions or legal analysis.

Accordingly, under the Bettencourt three part test, the role of the guardian ad litem is

clearly not perform "*a traditional "adjudicatory" function, in that he decides facts, applies*

*laws, and otherwise resolves disputes on the merits (free from direct political influence?""*

Thus the role of the guardian ad litem does not meet the first of the three part test in Bettencourt

and the guardian ad litem is not entitled to absolute judicial immunity.

The Constitution of Massachusetts reinforces the law that individuals, such as the

defendant, Evan Ehmann, Licsw, are not immune to suit.  Article V of the Massachusetts

Constitution states:

"All power residing originally in the people, and being derived from them, the several

magistrates and officers of government, vested with authority, whether legislative, executive, or

judicial, are their substitute and agents, and are at all times accountable to them."

Article VI of the Constitution of Massachusetts states:

"No man, nor corporation, or association of men, have any other title to obtain

advantages, or particular and exclusive privileges, distinct from those of the community, than

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint
14

what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary , nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge, is absurd and unnatural."

Article IV of the Constitution of the Commonwealth of Massachusetts states:

"The people of this Commonwealth have the sole and exclusive right of governing themselves, as a free, sovereign, and independent state; and do, and forever hereafter shall, exercise and enjoy every power, jurisdiction, and right, which is not, or may not hereafter, be by them expressly delegated to the United States of America in Congress assembled."

Article XI of the Constitution states:

"Every subject of the Commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

Article VII states, in part:

"Government is instituted for the common good; for the protection, safety, prosperity, and happiness of the people; and not for the profit, honor, or private interest of any one man, family or class of men."

Defense counsel asks this honorable court to hold the illegal actions of the defendant Evan Ehmann as justified and legal. They ask that illegal acts become legal and sanctified by the creature called "quasi-judicial immunity" or "absolute immunity"

The Supreme Judicial Court of Massachusetts held in Kris Whitney & another v. City of Worcester & others (373 Mass 208; 366 N.E. 2d 1210; 1977 Mass. Lexis 1073 that:

"Accordingly, we state our intention to abrogate the doctrine of municipal immunity…as we noted in Morash, we have no doubt as to our power to abrogate the doctrine of governmental immunity. We also have no doubt that the time for change is long overdue."

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint
15

The legislature responded by enacting laws, such as chapter 268, Conduct of Public Officials and Employees.

Under Chapter 268, section 23 Supplemental provisions, standards of conduct:

"Section 23. (a) In addition to the other provision of this chapter, and in supplement thereto, standard of conduct, as hereinafter set forth, are hereby established for all state, county and municipal employees.

(b) No current officer or employee of state, county or municipal agency shall knowingly, or with reason to know:

   (2) Use or attempt to use his official position to secure for himself or others unwarranted privileges or exemptions which are of substantial value and which are not properly available to similarly situated individuals;

(c) No current or former officer of employee of a state, county or municipal agency shall knowingly, or with reason to know:

   (1) accept employment or engage in any business or professional activity which will require him to disclose confidential information which he has gained by reason of his official position or authority.

The defendant, Evan Ehmann, Licsw by virtue of the assigned position to investigate and recommend to the Hampshire Probate and Family Court, violated Chapter 268, section 23 and may be prosecuted by the State Ethics Commission and other agencies.

Legislative Immunity differs from what defense counsel avers.

"It is true that "[a] defense of absolute legislative immunity for state legislators has been recognized since 1951." Romero-Barcelo v Hernandez Agosto, 716 F. 3d 23, 28 (1st Cir. 1996)). This immunity defense, however, "protects only conduct within the sphere of legitimate legislative activity." Id. (quoting Colon-Berrios v. Hernandez-Agosto, 716 F. 2d 85, 89 (1st Cir. 1983))…Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield, 907 F. 2d 239, 246 (1st Cir. 1990) ("when members of a town council are sued for enacting zoning regulations, they…are absolutely immune.") I note, however, that even if it did apply, the absolute immunity defense would not protect the alleged conduct of defendants because that conduct, i.e. attempted extortion [illegal wiretapping], cannot be considered legitimate legislative activity. (Romero-Barecelo, 75

F.3d at 29).

In 1980, the Supreme Judicial Court of Massachusetts stated, in Young v.

Mitchell Garwacki & another, 380 Mass. 162; 402 N.E. 2d 1045; 1980 Mass. Lexis 1061:

"We have repeatedly demonstrated our readiness to reconsider common law

immunity doctrines" (See e.g., Colby v Carney Hosp., 356 Mass. 527 (1969) (Charitable

immunity); Sorenson v. Sorensen, 369 Mass. 350 (1975) (parental immunity); Lewis v.

Lewis, 370 Mass. 619 (1976) (interspousal immunity); Whitney v. Worcester, 373 Mass.

208 (1977)(sovereign immunity)... Today, we do away with the ancient law that bars a

tenant's guest from recovering compensation from a landlord for injuries caused by

negligent maintenance of areas rented to the tenant. Like the other rules based on status,

this rule has prevented a whole class of people from raising the overriding issue: whether

the landlord acted reasonably under the circumstances. The practical result of this

archaic rule has been to discourage repairs of rented premises. In cases like the one

before us, a landlord with knowledge of a defect has less incentive to repair it. And the

tenant, who often has a short-term lease, limited funds, and limited experience dealing

with such defects, will not be inclined to pay for expensive work on a place he will soon

be leaving."

Plaintiff's argument is that the concept of Quasi-Judicial Immunity, is not only

contrary to the laws of the Commonwealth of Massachusetts, and the Constitution of the

Commonwealth, it is a creation issued by judicial caveat, that prohibits pro-se litigants, or

those with limited funds, and "a whole class of people" to hold individuals such as the

defendant, Evan Ehmann, Licsw, "accountable at all times to the people." In short, it

grants defendants such as Evan Ehmann, Licsw the license to violate the constitution of

the United States, and the Constitution of Massachusetts, while abrogating the laws

enacted to enforce those rights enumerated in the constitutions. This unconstitutional

concept of "quasi-judicial immunity" has deprived thousands of fathers, like this plaintiff, the right to hold accountable these individuals for their insidious use of discriminatory practices to violate their constitutional rights "under color of state law" in violation of 18 USC 242:

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the Untied States...shall be fined under this title or imprisoned not more than one year, or both;"

In Kris Whitney & another v. City of Worcester & others, the Supreme Judicial Court of Massachusetts, 373 Mass. 208; 366 N.E. 2d 1210; 1977 Mass. Lexis 1073 stated:

"While the basic rules have been buffeted about through the years, one basic principle of immunity emerges: "The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability." Bolster v. Lawrence, 225 Mass. 387, 390 (1917).

The court continued to state in Whitney:

"The governmental immunity which attached to governmental functions and acts of public officers reflected two underlying premises; one, that public officers were in fact employed by the public at large rather than by the municipal government itself, and that there was no way to exact compensation from the disembodied "public"; and, two, that such activities, which often involve a high degree of discretion and judgment, should be insulated from a form of review which might impede governmental operations by subjecting governmental decision making to after-the-fact judicial tort analysis. The first

premise is manifestly unsound, as there is obviously a source of funds behind every public function. However, the second premise retains its basic validity today, and provision must be made to continue the protection to good government afforded by that premises. But the old distinctions sweep far too broadly and maintain the immunity in large areas in which the imposition of tort liability could in no way hinder the effective operation of governmental processes…We think that the appropriate dividing line falls between those functions which rest on the exercise of judgment and discretion and represent planning and policymaking and those functions which involve the implementation and execution of such governmental policy or planning…Under the formulation which we set forth in this case, we shift our focus from the nature of the governmental enterprise as a whole and the capacity in which the officer/agent was acting to the specific act or omission complained as of tortious. When the particular conduct claimed to be tortious involves rather the carrying out of previously established policies or plans, such acts should be governed by the established standards for tort liability applicable to private individuals or entities and the governmental entity in question held liable for the injuries resulting from such acts. This test would be applied regardless of whether the individual tortfeasor would previously have been classified as a public officer, an employee of a public officer, or a municipal employee."

## PLAINTIFF's RIGHT TO FEDERAL RELIEF

"To state claim for relief in action under 42 USCS §1983, violation of federal constitutional provision must be shown" (Ortega Cabrera v Bayamon (1977, CA1 Puerto Rico) 562 F 2d 91, 10 Envt Rep Cas 1723, 7 ELR 20766))

"Where violation of state law causes deprivation of rights protected by Constitution and statutes of United States, cause of action is stated under 42 USCS

§1983" (Wirth v. Surles (1977, CA4 SC) 562 F2d 319, 45 ALR Fed 864, cert den (1978)

435 US 933, 55 L Ed 2d 531, 98 S Ct 1509

"In action under 42 USCS §1983 first inquiry is whether plaintiff has been

deprived, within meaning of §1983, of right secured by Constitution and laws of United

States." (Martinez v. California (1980) 444 US 277, 62 L Ed 2d 481, 100 S Ct 553 reh

den (1980) 445 US 920, 63 L Ed 2d 606, 100 S Ct 1285.)

"Cause of action under §1983 exists under Fourth Amendment if plaintiff can allege facts

that tend to show that state actor exceeded bounds of Fourth Amendment" (Pruett v Town of

Spindale (2001, WD NC) 162 F Supp 2d 442.

"To state claim for relief in action under 42 USCS §1983, plaintiffs, must establish that

(1) they were deprived of right secured by Constitution or laws of United States, and (2) alleged

deprivation was committed under color of state law" (American Manufacturers Mutual Insurance

Company v. Sullivan (1999) 526  US 40, 143 L Ed 2d 130, 119 S Ct. 977, 99 CDOS 1577, 99

Daily Journal DAR 2021, 1999 Colo. J C A R 1147, 12 FLW Fed S 115.

Plaintiff maintains Shared Legal Custody of three minor children with the defendant

Mary Jane Stern.  By and because of the egregious actions of the defendants, the harm conducted

by the defendants placed a "chilling effect" on the conversations between the plaintiff and the

three minor children; subsequently, the act and actions of the defendant, Evan Ehmann, Licsw,

placed the plaintiff in a much worse position with respect to his three minor children than prior to

the institution of any investigatory proceedings as ordered by the Hampshire Probate and Family

Court.

"No specific intent to deprive person of federal right is necessary to create liability under

42 USCS §1983 which gives right of action against person who, under color of state law, custom,

or usage, subjects another to deprivation of any rights, privileges, or immunities secured by the

Federal Constitution.(Monroe v Pape (1961) 365 US 167, 5 L Ed 2d 492, 81 S Ct 473)

"In order to state claim under 42 USCS §1983, plaintiff must allege that (1) challenged

conduct was attributable at least in part to person acting under color of state law and (2) such conduct deprived him or her of right, privilege, or immunity secured by Constitution or laws of United States." ( Lewis v Gallivan, (2004, WD NY) 315 F Supp 2d 313)

## THE FEDERAL QUESTIONS

Federal Courts of United States have jurisdiction over case in which some right or sustained by construction of Constitution, laws, or treaties of United States. Railroad Co. v Mississippi (1880) 102 US 35, 12 Otto 135, 26 L Ed 96

When does the question of federal jurisdiction come into affect?

Federal jurisdiction under 42 USCS §1983 may be invoked, plaintiff herein argues, when the agent (GAL) acting under color of law, conspires by aiding and abetting two private citizens in a conspiracy to denigrate, demoralize and demean the plaintiff and violated the plaintiff's constitutional rights as accorded by the United States Constitution. In this case, it is the defendant Evan Ehmann, Licsw that aided the defendant Mary Jane Stern and defendant Gary Matteson, by receiving, listening, and writing, ad nauseum, of and about the contents of private conversations between a parent (plaintiff) and his non-custodial three minor children (plaintiff maintains shared legal custody). Defendant, Mary Jane Stern, by means of the Hampshire Probate and Family Court, is seeking sole legal custody in an effort to deny this plaintiff his paternal, substantive and legal rights accorded to him since 1994 by the Honorable Judge David Sacks (Judgment of Divorce Nisi), and re-affirmed by Chief Justice of the Probate Courts Sean Dunphy (Agreement of the Parties, September 16, 1997). Proceedings of the Hampshire Probate and Family Court have been stayed by the Honorable Judge Geoffrey Wilson, pending the resolution of this federal district court case and the concurrent State Superior Court case.

Plaintiff seeks redress and a remedy of egregious, negligent, willful and malicious and reckless regard of the laws of the United States and the Constitution of the United States against this plaintiff, by the defendants. Counsel for defendant Evan Ehmann, avers that

defendant Evan Ehmann is entitled to a creature called "Quasi-Judicial Immunity" under the laws of the Commonwealth of Massachusetts. All law falls under the penumbra of the federal government, including that of state law.

"Where rights under state laws become material to the application of federal statutes, federal courts look to the decisions of the states, where those rights arise to determine what they are, even though federal courts are not bound by state decisions interpreting federal statutes." Dayton & M.R. Co. v Commissioner (1940, CA4) 112 F 2d 627.

If this court finds that plaintiff's responsive pleading lacks the necessary elements for continuation in the federal court, the action should not be dismissed with prejudice. In the alternative, the action should be remanded to the Hampshire Superior Court, but plaintiff prays it not to be dismissed with prejudice. In a tactical move by the defendant's counsel, dismissing with prejudice the defendant's egregious violations would effectively deny the plaintiff the ability to recover for wrongs and violations (redress of grievances) and of liberties and constitutional rights secured and guaranteed by the United States Constitution, the Constitution of Massachusetts and Federal and State Law.

Thus, dismissal with prejudice would grant the denial of prosecution against defendants in state courts of comparable jurisdiction.

Wherein, your moving party argues that the proper venue is the Federal District Court of Springfield, Massachusetts for the following reasons herein stated for the applicable federal constitutional and federal laws.

In Sarkasian v. Benjamin, 62 Mass App. Ct 741; 820 N.E.2d 263; 2005 Mass. App. Lexis 13, the Appeals Court of Massachusetts held that:

"It is true that an attorney who accepts a court appointment is ordinarily held to the same standards as a retained attorney, see S.J.C. Rule 3:07, Mass R. Prof. C 6.2 comment 3, 426 Mass.

1416 (1997), the mere fact that the defendant's order of appointment designated her to act as the child's attorney does not resolve the question of her entitlement to immunity in this action. Rather, we must look to the duties she was asked to perform that give rise to the malpractice claim (See Lalonde v. Eissner, 405 Mass. 207, 212, 539 N.E. 2d 538 (1989) (whether one is entitled to immunity as a "quasi judicial officer" depends on an analysis of the functions one performs.) Plaintiff argues that the role of investigatory "arm of the court" does not include the right of the defendant to violate plaintiff's constitutional right to privacy by receiving recorded conversations between the plaintiff and his three minor children.

The carte blanche approach to allowing all guardian ad litem's this doctrine of "quasi judicial immunity" is created under judicial docrine and is contrary to the Constitution of the Commonwealth of Massachusetts and should be invalidated and held unconstitutional. The fact that this defendant avers to this court that his actions were worthy of immunity is a slap in the face of constitutional principles and the foundations that our government is rested upon. Granting this defendant this right, discards the premise that "every wrong there must be a remedy" (Marbury v. Madison) and grants state actors, such as the defendant, the unimpeded right to violate the constitutional rights of those they are investigating, without being held accountable for their egregious, wanton and reckless, illegal actions. The process of granting individuals, unlike judges, the rights accorded judges, for acting in their official capacities, extends privileges not accorded to other individuals, that have not been duly appointed by the people, and can be removed from their office, by the people, under the Constitution of the Massachusetts. Recalling your moving party's citation that not even the former President, or the former Attorney General could be immune from liability, neither should the defendant Evan Ehmann, Licsw.

## FEDERAL QUESTIONS TO BE CONSIDERED

"There is no single precise definition of the concept of the original federal-question jurisdiction of Federal District Courts under 28 USCS §1331. Merrell Dow

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

23

Pharmaceuticals Inc v Thompson et al., 478 US 804; 106 S Ct 3229

Do Guardian Ad Litem's maintain the ability to act "freely" in such a capacity to violate the rights of plaintiff, in conspiracy with private actors, contrary to the Public Law of the United States and the Constitution of the United States?

Does the United States Constitution's Fourth Amendment of Unreasonable Search and Seizure of one's person, papers and effects, including that of illegal recordings command private citizens as it does the Federal, State and Local law enforcement agencies, including officials acting as an arm of the court?

Does the United States Constitution's Fourth Amendment grant the right of private citizens to unreasonably search and seize private conversations and recordings and present them to "state officials" in their "official capacity" under color of state law?

Does 42 USCS §1983 extend to private citizens, if, after their conduct has violated other laws of the United States, provided illegal recordings to "state officials" thus creating a deprivation of federal civil rights of the victim(plaintiff)?

Does a plaintiff have a cause of action against federal investigatory agencies and State for failure to prosecute criminal behavior for deprivation of plaintiff's civil rights, which is consistent with Title III of the Crime Control and Safe Streets Act of 1968?

Does the Fourth Amendment's clause for the right to privacy extend to private citizens and "state" officials acting under color of law under Title III of the Omnibus Crime Control and Safe Streets Act of 1968?

## CODE OF FEDERAL REGULATIONS

18 USCS §242 states, in part:

"Whoever, under color of any law, statute, ordinance, regulation or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the

deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both:"

"A suit arises under the Constitution of the United States and laws of the United States only when plaintiff's statement of his own cause of action shows that it is based upon those laws of that Constitution; it is not enough that defendant may find in Constitution or laws of United States some ground of defense." In re Winn (1909) 213 US 458, 53 L Ed 873, 29 S Ct 515 (ovrld in part by Ex parte Harding (1911) 219 US 363, 55 L Ed 252, 31 S Ct 324.

Plaintiff sought recovery under 42 USCS §1983. Defendant Gary Matteson's Counsel argues that "plaintiff has the burden of showing that subject matter jurisdiction does in fact exist." Aversa v United States, 99 F. 3d 1200, 1209 (1st Circuit 1996).

Plaintiff's pleading stated in paragraph twenty one (21) :

"Plaintiff, Scott Lee Stern, has brought this action to enforce the laws of the United States, violations by the defendant (s) against the plaintiff's Federal Constitutional rights under 42 USCS 1983 and Title III of the Omnibus Crime Control and Safe Streets Act of 1968 18 USCS §2510, §2511, §2515, et seq."

"Merely alleging violation of constitutional rights does not confer jurisdiction on federal court" Bartlett v Duty (1959, DC Ohio) 174 F Supp 94, 12 Ohio Ops 2d 737, 84 Ohio L Abs 555.

"Pleading had to state facts showing violation of constitutional right" Woodhouse v Budwesky (1934, CA4 Va) 70 F 2d 61, cert den (1934) 293 USCS 573, 79 L Ed 671, 55 S Ct 84.

The Federal Rules of Procedure, under 12 ( b) (6) (1) states, in part:

"[the] district Court must construe the complaint liberally, treating all well-

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

25

deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both:"

"A suit arises under the Constitution of the United States and laws of the United States only when plaintiff's statement of his own cause of action shows that it is based upon those laws of that Constitution; it is not enough that defendant may find in Constitution or laws of United States some ground of defense." In re Winn (1909) 213 US 458, 53 L Ed 873, 29 S Ct 515 (ovrld in part by Ex parte Harding (1911) 219 US 363, 55 L Ed 252, 31 S Ct 324.

Plaintiff sought recovery under 42 USCS §1983. Defendant Gary Matteson's Counsel argues that "plaintiff has the burden of showing that subject matter jurisdiction does in fact exist." Aversa v United States, 99 F. 3d 1200, 1209 (1st Circuit 1996).

Plaintiff's pleading stated in paragraph twenty one (21) :

"Plaintiff, Scott Lee Stern, has brought this action to enforce the laws of the United States, violations by the defendant (s) against the plaintiff's Federal Constitutional rights under 42 USCS 1983 and Title III of the Omnibus Crime Control and Safe Streets Act of 1968 18 USCS §2510, §2511, §2515, et seq."

"Merely alleging violation of constitutional rights does not confer jurisdiction on federal court" Bartlett v Duty (1959, DC Ohio) 174 F Supp 94, 12 Ohio Ops 2d 737, 84 Ohio L Abs 555.

"Pleading had to state facts showing violation of constitutional right" Woodhouse v Budwesky (1934, CA4 Va) 70 F 2d 61, cert den (1934) 293 USCS 573, 79 L Ed 671, 55 S Ct 84.

The Federal Rules of Procedure, under 12 ( b) (6) (1) states, in part:

"[the] district Court must construe the complaint liberally, treating all well-

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

25

pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff"
(Aversa Ibid at 1209-1210)

Plaintiff maintains that allegations alleged in paragraphs enumerated forty-five
(45) through seventy three (73) were not objected to by the defendant Mary Jane Stern
and defendant Gary Matteson,  and must therefore held as true in favor of the plaintiff.
The allegations include in paragraph seventy one the causal link that defendant Gary
Matteson provided the residence (police report identified the number to the owner of the
residence), and the telephone number (police report identified the number plaintiff dialed
to be the residence of defendant Gary Matteson, where the factual illegal interception
took place.  Defendant Mary Jane Stern "handed" the tape of conversations to the
Guardian Ad Litem, defendant, Evan Ehmann, Licsw, during one of several interviews at
the residence of defendant, Gary Matteson as written by the defendant Evan Ehmann,
Licsw in the Report of the Guardian Ad Litem of November 29, 2004.

Wherein, plaintiff's constitutional rights under Title III of the Omnibus Crime
Control and Safe Streets Act of 1968 were subsequently violated, and thus, deprived
plaintiff of his rights under the United States Fourth Amendment of the Constitution that
requires federal jurisdictional review by this court.

Defendant Gary Matteson's counsel elucidates to 28 USCS §1331.  28 USCS
§1331 provides not only authority to decide whether cause of action is stated by
plaintiff's claim that he has been injured by violation of United States Constitution, but
also authority to choose among available judicial remedies in order to vindicate
constitutional rights. Bush v. Lucas (1983) 462 US 367, 76 L Ed 2d 648, 103 S Ct 2404.

"Section 1983 of the Civil Rights Act of 1871 renders individuals
in state government liable when they deprive citizens of "any rights, privileges or immunities
secured by the Constitution and laws" 42 U.S.C. 1983 (1982)  This provision, enacted as section

1979 of the Civil Rights Act of 1871, was originally a part of the general civil rights legislation passed by Congress after the Civil War in an effort to give substantive freedom to the emancipated slaves. (Slaughter House Cases, 83 U.S. (16 Wall.) 36, 71 (1873).

A 42 U.S.C. §1983 plaintiff must also show that the defendants, herein named, Mary Jane Stern, Gary Matteson, and Evan Ehmann, are individuals, who, acting under the color of state law violated the Civil Rights of the plaintiff Scott Stern by participating in a conspiracy to illegally record the Plaintiff contrary to the Constitution of the United States and Public Law of the United States.

"Where bill sets up violation of federal constitution, federal court must take jurisdiction where it determines that question made in good faith is presented to it for its decision" Illinois C.R. Co. v Adams (1901) 180 US 28, 45 L Ed 410, 21 S Ct 251; Hays v Port of Seattle (1920) 251 US 233, 64 L Ed 243, 40 S Ct 125.

"Jurisdiction of district Court is to be determined by allegations of complaint" Moore v Chesapeake & O.R. Co. (1934) 291 US 205, 78 L Ed 755, 54 S Ct 402 (Criticized in Heckelmann v Piping Cos (1995, ND Okla) 904 F Supp 1257.

42 U.S.C. §1983 states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be sub-jected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, Any Act of Congress applicable exclusively to the Dis-Trict of Columbia shall be considered to be a statute of the District of Columbia"

(History: R.S. §1979' Dec 29, 1979, P.L. 96-170, §1, 93 Stat. 1284; Oct 19, 1996, P.L. 104-317, Title III, §309 (c), 110 Stat. 3853)

Plaintiff, Pro-Se, in his own right (reis juris), brought suit in the United States District Court, a right of action (Rectus in Curia) to redress wrongs that defendants committed contrary to Public Law of the United States of America

Title III of Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§2510-2520, does not unconstitutionally authorize such broad intrusions as to violate Fourth Amendment, allowing obtaining of testimonial evidence of crimes in violation of Fourth and Fifth Amendments, violate First Amendment rights of free speech, allow search for which no notice prior to entry is required, or allow interceptions without establishment of probable cause. United States v. Sklaroff (1975, CA5 Fla) 506 F2d 837, cert den (1975) 423 U.S. 874, 46 L.Ed 2d 105, 96 S Ct 142.

The defendants violated plaintiff's Fourth Amendment right by intercepting the conversations of the plaintiff with his minor children, unauthorized by any court, and without probable cause. Whereupon, when the *defendant Evan Ehmann, Licsw, without probable cause, received the recordings illegally obtained by the defendant Mary Jane Stern, at the residence of the defendant Gary Matteson, by use of telephonic equipment owned by Gary Matteson, and a number leased thru a telephone company, thus obtaining conversations to be effectuated as testimonial evidence to be used against the Plaintiff, did thereby violate plaintiff's Fourth Amendment right of unreasonable search and seizure of his property*. Thus, plaintiff's venue for Jurisdiction of this matter clearly falls on the federal courts "to redress grievances" of the defendants and the act of conspiracy, committed by the defendants, by procuring the recordings, utilizing the recordings, and publishing the recordings, at the Hampshire Probate and Family Court, for others to review and read, did thereby abrogate the intent of the United States Congress when they established Title III of the Omnibus Crime

Control and Safe Streets Act of 1968.

"There exists no statutory procedure whereby private individuals can secure official authorization of interceptions they wished to make and thus they will never be in position to invoke "good faith" defense because such defense is available only to law enforcement personnel and to others, like telephone company employees, who may be expected to assist in implementing authorized interceptions." Citron v. Citron (1982, SD NY) 539 F Supp 621, affd (1983, CA2 NY) 722 F2d 14, cert den (1984) 466 US 973, 80 L.Ed 2d 823, 104 S Ct 2350

"When many individuals together take steps necessary for recording of telephone conversations, victim's privacy is violated, regardless of who actually listens to tapes; argument of telephone company that not of its employees actually listed to tape conversations is no defense in suit seeking civil damages under 18 USCS §2520." Jacobson v Rose (1978, CA9 Nev) 592 F 2d 515, 26 FR Serv 2d 693, cert den (1979) 442 US 930, 61 L Ed 2d 298, 99 S Ct 2861.

"18 USCS §2520 (Omnibus Crime Control and Safe Streets Act) applies to [husband's] placement of recording device on telephones within marital home without [wife's] knowledge or consent." Heggy v Heggy (1988, WD Okla) 699 F Supp 1514, affd, remanded (1991, CA10 Okla) 944 F2d 1537, cert den (1992) 503 US 951, 117 L Ed 2d 651, 112 S Ct 1514.

"In order to prevail under 18 USCS §2520 plaintiff must show that oral communications were in fact intercepted, disclosed, or used by defendant in violation of 18 USCS §2510 et seq." Broadway v Montgomery (1976, CA5 Ala) 530 F2d 657.

It is clear from plain language of 18 USCS §2520 ( a ) that it provides private right of action to enforce 18 USCS §2511 (1) ( a ).

"Fact that it may appear in suit in federal court against state officer whose action under color or state law is alleged to invade right protected by federal constitution against state action, that such officer has exceeded authority conferred by state, does not deprive court of jurisdiction." Sterling v Constantin (1932) 287 US 378, 77 L Ed 375, 53 S Ct 190

The Hampshire Probate and Family Court Judge, the Honorable Geoffrey

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

29

Wilson, upon proper motion, redacted three pages of the Guardian Ad Litem's report of November 29, 2004, pursuant to United States Code 18 U.S.C. §2515.

The Honorable Judge Geoffrey Wilson would not have ordered the redaction of the three pages of the Guardian Ad Litem's report unless your moving party had substantially *proven the necessary elements for the redaction of the three pages the defendant Evan Ehmann, Licsw had written in his report of the Guardian Ad Litem of November 29, 2004.* In essence, your moving party provided the necessary legal framework to prove the Honorable Judge Geoffrey Wilson that there had been an egregious violation; a violation contrary to the Constitution; a violation contrary to the Code of the United States of America by the Defendant Evan Ehmann, Licsw.

Justice Black stated in Mapp:

"Nothing can destroy a government more quickly that its failure to observe its own laws, or worse, its disregard of the charter of its own existence…As Mr. Justice Brandeis, dissenting, said in Omstead v United States, 277 U.S. 438, 485 (1928): "Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example… If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."

Plaintiff, your moving party, never authorized the illegal recording of his conversations. Nor did Plaintiff, at any time, grant the defendants, individually, or collectively, the authority and privilege to violate his United States Constitutional Rights. The Guardian Ad Litem, appointed by the Judge of the Probate and Family Court, "is an arm of the Court and an integral part of the judicial process" (Sarkisian v Benjamin, 62 Mass App Ct 741) and is considered an "officer of the court" (Tripp v Gifford, 155 Mass. 108, 1891)

The defendant Evan Ehmann, Licsw, is an "arm of the court" and is an "integral part of the judicial process" (See Gilmore v. Gilmore, 369 Mass 598, 604, 341 N.E. 2d 655 (1976) Thus, the Guardian Ad Litem, by receiving the illegally recorded conversations of

the Plaintiff with his minor children, on a particular day and time, by and because of the defendants Mary Jane Stern, and Gary Matteson, did thereby extend the arm of the state to not only include these other actors, but did thereby include the state by being a public employee of the Probate and Family Court, by order of Judge Geoffrey Wilson; and did thereby grant the Plaintiff a federal cause of action against each of the defendants according to 42 U.S.C. §1983 by means of conspiracy and illegally wiretapping the plaintiff' contrary to plaintiff's constitutional rights and an extended cause of action against the Commonwealth of Massachusetts

.

"Punitive damages could be awarded upon showing that interceptions were perpetrated maliciously" Gerrard v Blackman (1975, ND Ill) 401 F Supp 1189.

These recordings of the plaintiff and his three minor children were conducted over a period of time, approximately eight months. During this process, the plaintiff's children were recalcitrant, reluctant, and hesitant to engage in meaningful and discourse during the regular weekly telephone conversations with the plaintiff, their father. During this period of time, the three minor children rarely engaged in meaningful conversations with their father, and visitation is currently non-existent. Which is in contrast to their behaviors prior to the illegal actions of the defendants by violating the rights of the plaintiff. The three minor children discussed issues relative to their school and other interests, with the plaintiff. This court may be able to remedy the Parental Alienation that plaintiff has suffered, by the defendants, and it can remedy other matters as well. Jurisdiction in this venue is appropriate when violations of federal statute or constitutional deprivation has occurred. Eight months of illegal wiretapping of conversations between the plaintiff and his minor children certainly would give rise to "malicious" and with proper discovery these facts may be more ascertainable.

"$10,000 award available under 18 USCS §2520 is designed to compensate plaintiff for all of the transgressor's misdeeds under wiretapping statute arising out of closely related course of conduct that takes place over a relatively short period of time, and recordings, disclosures, and use of illegally intercepted communications by defendant, who secretly recorded conversations of

his employees, disclosed records to his wife and others, and used them in attempt to discharge two of his employees, were sufficiently interrelated and time-compacted so as not to invoke multiple applications of the $10,000 statutory award. Dorris v Absher (1999, CA6 Tenn) 179 F3d 420, 15 BNA IER Cas 193, 138 CCH LC P 58643, 1999 FED App 200P.

The defendants did not seek court authorization to conduct an illegal taping of the conversations of the plaintiff and his three minor children over a period of approximately eight months.  The plaintiff, with authority by judgment of divorce decree and Agreement of the Parties by the Hampshire Probate and Family Court, has shared legal custody of three minor children, and, in so doing, agreed with the defendant Mary Jane Stern to engage in telephone conversations with the three minor children on Tuesday, Wednesday and Thursday evenings.  No modifications have occurred by the court at this time.  On or about March of 2004, a beeping sound emanated, at various dates and times, from the phone number 1-413-648-9003, the residence of defendant Gary Matteson, as is indicated by the North Adams Police Report of November 17, 2004, which had recently became the living arrangement for the three minor children and plaintiff's ex-wife, the defendant, Mary Jane Stern.

The defendants, by their act and actions, of illegally recording conversations of plaintiff with his five minor children (three minor children reside with plaintiff's ex-wife; the other two minor children were in the care and custody of the plaintiff during various dates and times of the telephone conversations, did thereby violate plaintiff's Fourth Amendment right of unreasonable search and seizure.

Article IV of the United States Constitutions states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Historically, Article IV has been for improper police action and the abuse of police power. Plaintiff argues that the intent of the framers of the Constitution were to protect the people, from the people, regardless of their occupation or position, and not just to protect the people from the English military which effectuated illegal searches and seizures of the colonies without authorization from the King of England. Article IV does not state that the government shall be the only entity to issue warrants, but rather, it is ambiguous, that "no warrants shall issue" and that upon "probable cause". The framers of the Constitution wanted to protect the people from the people themselves; in that a group of people, could not, search others in "their persons, houses, papers and effects, against unreasonable searches and seizures" not just the military.

This interpretation is articulated in Justice Douglas's dissent in Wolf v. Colorado, 338 U.S. 25 (1949) overruled by Mapp v Ohio, 367 U.S. 643 (1961), Justice Douglas stated:

"It is disheartening to find so much that is right in an opinion which seems to me so fundamentally wrong (Commentary: Justice Douglas was right in his dissent, Mapp v Ohio overruled Wolf v Colorado) Of course I agree with the Court that the Fourteenth Amendment prohibits activities which are proscribed by the search and seizure clause of the Fourth Amendment….Quite apart from the blanket of application of the Bill of Rights to the States, a devotee of democracy would ill suit his name were he to suggest that his home's protection against unlicensed governmental invasion was not "of the very essence of a scheme of ordered liberty." Palko v Connecticut, 302 U.S. 319, 325. It is difficult for me to understand how the Court (United States Supreme Court) can go this far and yet be unwilling to make the step which can give some meaning to the pronouncements it utters.

Imagination and zeal may invent a dozen methods to give content to the commands of the Fourth Amendment. But this Court is limited to the remedies currently available, it cannot legislate the ideal system. If we would attempt the enforcement of the search and seizure clause in the ordinary case today, we are limited to three devises; judicial exclusion of the illegally obtained evidence; criminal prosecution of violators; and civil action against violators in the

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

33

action of trespass."

A criminal act of theft, and the subsequent element to prove the act of theft, is based on the fourth amendment and the right of the people to be free from "unreasonable search and seizure". The defendants stole the plaintiff's voice by illegally recording conversations.

In Mapp v Ohio, the Court decided the issue regarding the illegal search and seizure of persons extended to the states and denied the admissibility of evidence illegally obtained. This ruling, is the basis that granted the Honorable Judge Geoffrey Wilson the right to redact the three pages before the court that stipulate, clearly and unequivocally, that illegally obtained evidence, including that of recordings, cannot be used in any court in the United States. Congress followed up by constructing public law to enforce and supplement the decision in Mapp v Ohio.

Justice Clark stated in Mapp:

"Today we once again examine Wolf's constitutional documentation of the right to privacy free from unreasonable state intrusion, and, after its dozen years on our books, are led by it to close the only courtroom door remaining open to evidence secured by official lawlessness in flagrant abuse of that basic right, reserved to all persons as a specific guarantee against that very same unlawful conduct. We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."

Justice Clark further opined in Mapp:

"Since the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth [Amendment], it is enforceable against them by the same sanction of exclusion as is used against the Federal Government. Were it otherwise, then just as without the Weeks rule the assurance against unreasonable federal searches and seizures would be a "form of words." Valueless and undeserving of mention in a perpetual charter of inestimable human liberties, so too, without that rule the freedom from state invasions of privacy would be so ephemeral and so neatly severed from its conceptual nexus with

the freedom from all brutish means of coercing evidence as not to merit this Court's high regard as a freedom "implicit in the concept of ordered liberty" . . . To hold otherwise is to grant the right but in reality to withhold its privilege and enjoyment."

"Rights and remedies, legal or equitable, provided by statutes of states to be pursued in state courts could be enforced and administered in federal courts" Williams v Crabb (1902, CA7 Ill) 117 F 193, cert den (1902) 187 US 645, 47 L Ed 347, 23 S Ct 845; Pierce Petroleum Corp v Empire Gas & Fuel Co. (1927, CA5 Tex) 17 F2d 758.

"Governmental entities, including municipality, may be liable under 18 USC §2520" Adams v Battle Creek (2001, CA6 Mich) 250 F 3d 980

"While Congress apparently did not intend to provide federal remedy for persons aggrieved by personal acts of their spouses committed within marital home, gross invasion of individual's privacy by private detective agencies, law firms, and other unknown persons, whether instigated by spouse or not, was not within statutory proscription; husband had civil cause of action under 8 USCS §2520 against wife who conspired with detective agency to install electronic wiretapping device upon telephone line used by husband at marital home for purpose of eavesdropping upon and intercepting husband's private telephone conversations with his attorney, and who thereafter gave these recordings to law firms for use in legal matters; doctrine of interspousal immunity did not bar husband from maintaining action against wife where there was not consideration of preserving marital unity and tranquility and preventing collusive suits between husband and wife to detriment of third party since whatever minimal marital felicity existed, if any, between husband and wife, either during time in which wiretap was actually operating or after discovery of installation of such wiretap, could not reasonably be subject of public interest to extent that otherwise valid cause of action would be barred." Remington v Remington (1975, ED Pa) 393 F Supp 898

"Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established, in certain classes of cases, that, once a court has original jurisdiction over some

claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. The leading modern case for this principle is Mine Workers v. Gibbs, 383 U.S. 715, 16 L Ed 2d 218, 86 S. Ct 1130 (1966) In Gibbs, the plaintiff alleged the defendants conduct violated both federal and state law. The District Court, Gibbs held, had original jurisdiction over the action based on the federal claims. Gibbs confirmed that the District Court had the additional power (though not the obligation) to exercise supplemental jurisdiction over related state claims that arose from the same Article III case or controversy. Id., at 725, 16 L. Ed. 2d 218, 86 S Ct 1130 ("The federal claim must have substance sufficient to confer subject matter jurisdiction on the court... Assuming substantially of the federal issues, there is power in federal courts to hear the whole")

In Merrell Dow Pharmaceuticals Inc. v. Thompson et al., as next friends and guardians of Thompson et al. 478 U.S. 804; 106 S Ct 3229; 92 L. Ed 2d 650; 1986 U.S. Lexis 143; 54 U.S.L.W. 5088

"Former Attorney General of United States is not entitled to absolute immunity claim for unwarranted electronic surveillance of citizens" Forsyth v Kleindienst (1984, CA3 Pa) 729 F2d 267, affd in part and revd in part (1985) 472 US 511, 86 L Ed 2d 411, 105 S. Ct 2806, 2 FR Serv 3d 221.

"Fact that no statutory language or legislative history indicates any Congressional intent to impose 42 USCS §1983 restrictions on federal jurisdiction leads to conclusion that 28 USCS §1331 provides jurisdictional basis for action against municipality for violations of Fourteenth Amendment" Fox v Castle (1977, MD Pa) 441 F Supp 411

## DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO THE FREEDOM OF ASSOCIATION AS GUARANTEED BY THE UNITED STATES CONSTITUTION

"Under the First Amendment to the Federal Constitution, freedom of association is afforded constitutional protection in two distinct senses:

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint
36

(1) freedom of private association, under which the Federal Constitution protects

against unjustified government interference with an individual's choice to

enter into and maintain certain intimate or private relationships; and

(2) freedom of expressive association, under which individuals have the freedom

to associate for the purpose of engaging in protected speech or religious

activities. Board of Directors of Rotary International v Rotary Club of Duarte

481 US 537, 107 S. Ct 1940

In Roberts v United States Jaycees, the United States Supreme Court held that:

"There is implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends"  Roberts v United States Jaycees, 468 US 609, 104 S Ct 3244.

Plaintiff opposes the dismissal of this action on the Defendants attempt to claim that Plaintiff failed to state a claim upon which a relief can be granted under 12 (b) (6).

"Reviewing standing issue under 1964 ( c ) to dismiss pursuant to Rule 12 (b) (6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief"  In re Burlington Coat Factory Sec. Litig., 114 F 3d 1410, 1420 (3d Cir. 1997) (citing Bartholomew v. Fischl, 782 F. 2d 1148, 1152 (3d Cir. 1986)."

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)   Plaintiff has provided evidence relative to support the complaints, and the allegations are in fact, true.

### **Applicability of State Law in Federal Courts**

"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply. 28 U.S.C. §1652. The word "laws," as used in the phrase "laws of the several states" in this provision, was construed in an 1842 decision of the United States Supreme Court to mean the state statutes, as interpreted by the state courts, and long established local customs having the force of laws, and as having no reference to the decisions of state courts on nonstatutory or common law. Swift v Tyson (1842) 41 U.S.1, 16 Pet 1, 10 L. Ed. 865. According to this view, federal courts were not bound by state court decisions in matters of general jurisprudence. Swift, however, was overruled by the United States Supreme Court in the landmark case of Erie R. Co. v Tompkins (1938) 304 U.S. 64, 82 L. Ed 1188, 58 S. Ct 817. In this case it was held that, except as to matters governed by the Federal Constitution or Acts of Congress, the law to be applied in any case is the law of the state and that the phrase "the laws of the several states" referred not only to state law as enacted by the state legislature, but to the law of a state as declared by its highest court, whether the law thus declared is local in visions, the requirements of a cause of action, the determination of damages, the availability and applicability of particular defenses, the power and extent of the jurisdiction of state courts, and certain other matters." Federal Trial Handbook, 3rd Edition, Hunter, Robert S., 1993, pg 13.

The Federal Trial Handbook, pg 1, states:

"There is a vast, interwoven network of laws, rules, practices, and customs that govern the trial of cases in federal courts. The *most basic of these is the Federal Constitution*...Federal Courts are bound by the written decisions of the United States District Courts, the Federal Judicial Circuit Courts, and the United States Supreme Court."

The defendants violated Plaintiff's most fundamental rights, rights secured by the Constitution of the United States; rights furthermore secured by 229 years of judicial decisions that followed the Constitution of the United States. Notwithstanding that American law, while

based on interpretation of the Constitution, sought guidance from the Laws of England, known as the Common Law. The defendants herein named, violated the most fundamental document, the United States Constitution.

"One of the primary considerations in determining whether federal courts should fashion federal law or merely adopt state law is the degree of need for national uniformity." (Air Disaster at Lockerbie (1991, CA2 NY 928 F2d 1267.

This cause of action transcends beyond the boundaries of Massachusetts. It is a federal concern when officers of the court, such as Evan Ehmann, Licsw fail to enforce the laws in place, wherein laws are disregarded and violated for an ulterior purpose. When plaintiff's rights were violated by the illegal recording of plaintiff's property, plaintiff's voice, the defendants failed to abide to the precepts and embodied in the United States Constitution. In essence, the three defendants, not only violated plaintiff's constitutional rights, they violated their oath to the allegiance of the United States Constitution itself. For years, students at grade schools have sworn to the following statement:

"I pledge allegiance, to the flag, of the United States of America, and to the republic for which it stands, one nation, under god, indivisible, with liberty and justice for all."

The defendants, with proper discovery, is one way or another, have sworn to abide by the principles of the United States Constitution. Discovery is relevant and necessary.

## THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The progress of the law through the first half of this century may be traced in the following series of articles: Bohlen, Right to Recover for Injury Resulting from Negligence without Impact, 1902, 41 Am.L.Reg.,N.S.,141; Throckmorton, Damages for Fright, 1921, 34 Harvard Law Review 260, 57 Am. L. Rev. 828, 153 L.T. 24, 89; Goodrich, Emotional Disturbance as Legal Damage, 1922, 20 Michigan L. Rev. 497 See Preston & Keeton, Tort Law, pg.55 footnote 1 with additional citations not herein referenced.

"It has gradually become recognized that there is no magic inherent in the name given to

a tort, or in any arbitrary classification, (See Smith, Torts without Particular Names, 1921, 69

U.Pa.L.Rev.91; Winfield, The Foundation of Liability in Tort, 1927, 27 Col. L. Rev. 1), and that

the infliction of mental injury may be a cause of action itself." Ibid, pg.57

     The classic article on the subject is Magruder, Mental and Emotional Disturbance in the

Law of Torts, 1936, 49 Harvard Law Review 1033, See also Prosser, Intentional Infliction of

Mental Suffering: A New Tort, 1939, 37 Michigan L. Rev. 874; Vold, Tort Recovery for

Intentional Infliction of Emotional Distress, 1939, 18 Neb. L. B. 222

     "The Intentional Infliction of Emotional Distress differs from the subtle and the

outrageous. Accordingly, it is generally held that there can be no recovery for mere profanity,

obscenity, or abuse, without circumstances of aggravation, or for insults, indignities, or threats

which are considered to amount to nothing more than mere annoyances. (Ibid, pg 57 profanity,

obscenity or abuse: Brooker v Silverthorne, 1919, 111 S.C. 553, 99 S.E. 350; Ex parte Hammet,

1953, 259 Ala. 240, 66 So. 2d 600; Halliday v Cienkowski, 1939, 333 Pa. 123, 3 A. 2d 372;

Atkinson v Bibb Manufacturing Co., 1935, 50 Ga. App. 434, 178 S.E. 537; Johnson v General

Motors Acceptance Corp., 5th Cir. 1955, 228 F. 2d 104. See for aggravation or for insults,

Slocum v Food Fair Stores of Florida, Inc., Fla. 1958, 100 So. 2d 396. See for indignities or

threats, Taft v. Taft, 1867, 40 Vt. 229; Stratton v Posse Normal School of Gymnastics, 1928, 265

Mass. 223, 163 N.E. 905."

     Preston & Keeton pg. 59, with emphasis on footnotes on 42, 43, and 44:

     "In special situation of extreme misconduct, recovery is allowed. The leading case which

first broke through the shackles of the older law was Wilkinson v. Downton, 1897, 2 Q.B.D., in

which a practical joker amused himself by telling a woman that her husband had been smashed up

in an accident and was lying at The Elms at Leytonstone with both legs broken, and that she was

to go at once in a cab with two pillows to fetch him home. The shock to her nervous system

produced serious and permanent physical consequences, which at one time threatened her reason,

and entailed weeks of suffering and incapacity. The court obviously had no love for the defendant; and as in many other hard case, the enormity of the outrage overthrew the settled rule of law." Preston & Keeton, pg. 60

"As other outrageous cases began to accumulate, the courts continued to struggle to find some familiar and traditional basis of liability; and when it was possible without too obvious pretense, the recovery was rested upon a technical assault, battery, false imprisonment, trespass to land, nuisance, or invasion of the right of privacy. Gradually too many cases appeared in which no such traditional ground could be discovered; and somewhere around 1930 it began to be recognized that the intentional infliction of mental disturbance by extreme and outrageous conduct constituted a cause of action in itself" Preston & Keeton, pg.60 and Brents v Morgan, 1927, 221 Ky. 765, 299 S.W. 967.

"The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests. The result is something very like extortion. The leading case is an English one, Janvier v. Sweeney, 1919, 2 K.B. 316. Preston & Keeton, pg 62

"Still another basis on which extreme outrage can be found is the defendant's knowledge that the plaintiff is especially sensitive, susceptible, and vulnerable to injury through mental distress at the particular conduct." Braun v. Craven, 1898, 175 Ill. 401, 51 N.E. 657.

In Restatement of the Law, 1948, Supp., Torts, §46, Comment g:

"In short, the rule stated in this section imposes liability for intentionally causing severe emotional distress in those situations in which the actor's conduct has gone beyond all reasonable bounds of decency. The prohibited conduct is conduct which in the eyes of decent men and women in a civilized community is considered outrageous and intolerable. Generally, the case is one in which the recitation of the facts to an average member of the community would arose his resentment against the actor and lead him to exclaim 'Outrageous!'" Preston & Keeton, pg 60,

footnote 54

"On the facts of all these cases, it would appear that there was a very high degree of probability that the mental disturbance would follow, and that the defendant proceeded in conscious and deliberate disregard of it, so that the defendant's conduct would properly be called willful, wanton or reckless" Preston & Keeton, pg. 65.

In Neville v. Gile, 174 Mass. 305, 306, 54 N.E. 841 (1899) it was alleged that plaintiff "suffered physically as well as mentally, and has been distressed in body and mind."

In Clark, Law of Domestic Relations, §12.3, at 663 (2d ed. 1987) a plaintiff could seek compensation for "humiliation, embarrassment, mental anguish, and loss of consortium."

As the Appeals Court noted in Quinn v. Walsh, 49 Mass App. Ct. 696; 732 N.E. 2d 330; 2000 Mass. App. Lexis 565 (2000):

"By the mid 1950's, the common law "heart balm" torts were generally expressed in only two cause of action, the tort of alienation of affection and criminal conversation. See, e.g. Ross v. Nourse, 330 Mass 666, 116 N.E.2d 323 (1953). In Doe v. Doe, 378 Mass. 202, 203, 390 N.E. 2d 730 (1979), "the continuing validity of the torts of alienation of affections and criminal conversation," by judicial determination was left to another day, which never dawned. The torts were abolished by statute six years later."

Does the abolishment of state statute prevent this court from ruling on the merits of regarding the tort of alienation of affection in light of Marbury v. Madison?

The fact is, without our system of government, and the judicial branch, the citizens of the United States, the citizens of the Commonwealth of Massachusetts, would have wrongs and injuries perpetrated against them, without recourse. The framers of the Constitution gave the people of the United States, not only the checks and balances in the Constitution, but the means to remedy wrongs by use of the Constitution. This remedy has been afforded the judiciary with the means to reason right from wrong and good from bad, and to determine the legality of issues

based upon 200 years of precedent established by the Constitution of the United States.

While ours is not a perfect government, it embodies Common Law, English Law, and principles of democracy to guarantee that the rights of the minority shall not be minimized, quashed or deprived.

This plaintiff seeks redress of grievances for the causes of action herein described in this complaint, yet asks this court to look back, with insight and wisdom, with respect to the tort of alienation of affections, based on Marbury v. Madison: "every wrong there must be a remedy".

Prosser & Keeton suggested that the actions of alienation of affections were "peculiarly susceptible to abuse...It is notorious that they have afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement." Prosser & Keeton §124, at 929. What if the alienation is not directly between current spouses, and there is no blackmail or extortion involved? What if it involves one parent's (defendant Mary Jane Stern, parent A) various 'tools of the trade', such as the illegal wiretapping of a former spouse, to denigrate, demoralize and demean the other parent's (plaintiff Scott Stern, parent B) relations with minor children.?

What if this former spouse (parent A), employs illegal activities, violates United States Constitutional rights of the targeted parent (parent B), and, in the process, negatively influences the children to deny such activity as factual, in order to have an unfair advantage over the other parent (parent B), violating due process, privacy, and the unreasonable search and seizure principles of the United States Constitution by utilizing three minor children to commit and hide such illegal, unethical and immoral behavior from the targeted parent (parent B)?. Does the parent (parent A) that utilizes the children in such a way exemplify the embodiment of good parenthood? It would be incredulous to say that this behavior would not amount to flagrant violations of all the moral and ethical standards our society embodies in child-rearing and parenthood. Certainly, the act and actions, by the defendants and their illegal behaviors should be considered as to rise to the level "alienation of affections?"

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

The parent that commits such an act against another parent has violated the "body politic" as is stated in the Preamble of the Massachusetts Constitution:

The body politic is formed by a voluntary association of individuals; it is a social compact, by which the whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good. It is the duty of the people, therefore, in framing a constitution of government, to provide for an equitable mode of making laws, as well as for an impartial interpretation, and a faithful execution of them; that every man may, at all times, find his security in them."

Was it equitable and constitutional, on the part of the legislature of the Commonwealth of Massachusetts, to eliminate the tort of alienation of affections because of the possibility of blackmail or extortion between spouses when the tort had ramifications extending beyond a direct link between two people, as a married couple or a couple that co-habited with each other While there is a link, it is not the "usual and customary" link associated with tort of alienation of affections. That the tort should not have been abolished because the statute allowed a "remedy" to redress "all injuries and wrongs" perpetrated by individuals such as the defendants. The legislatures act of should be considered unconstitutional is clear. The abolishment of the statute abrogates and defies the principle of Marbury v Madison, 1 Cranch 137; 2 L Ed 60 (1803)

"That the people have an original right to establish, for their future government, such principles, as, in their opinion, shall most conduce tot heir own happiness is the basis on which the whole American fabric has been erected. The exercise of this original right is a very great exertion; not can it, not ought it, to be frequently repeated. The principles, therefore, so established, are deemed fundamental...the constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the legislature shall please to alter it...If the former part of the alternative be true, than a legislative act contrary to the constitution is not law; if the latter part be true, then

written constitutions are absurd attempts, on the part of the people, to limit a power in its own natural illimitable... It is also not entirely unworthy of observation, that in declaring what shall be the supreme law of the land, the constitution itself is first mentioned; and not the laws of the United States generally, but those only which shall be bade in pursuance of the constitution, have that rank... Thus, the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void; and that courts, as well as other departments, are bound by that instrument"

Thus the abolishment by the Massachusetts legislature repealing the statute for the alienation of affections, in light of Marbury v Madison, was "repugnant to the Constitution of the United States" Plaintiff has cause of action, by the defendants illegally wiretapping plaintiff's conversations, to alienate the affections of the three minor children, which is also "repugnant to the Constitution of the United States"

Massachusetts Courts have found, in Vittands & others v. Sudduth, 49 Mass. App. Ct. 401; 730 N.E. 2d 325; 2000 Mass. App. Lexis 468 that:

"tortuous intentional infliction of emotional distress is a claim for interference with an individual" Nolan & Sartario, Tort Law §19 (1989)

The court held, in Vittands, the following elements comprised the tort of intentional infliction of emotional distress: (1) that the actor intended to inflict emotional distress or that she knew or should have known that emotional distress was the likely result of [the] conduct, (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' (3) that the actions of the defendant were the cause of the plaintiff's distress, and (4)that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable [person] could be expected to endure it." Conway v. Smerling, 37 Mass. App. Ct. 1, 8, 635 N.E.2d 268 (1994), quoting from Agis v Howard Johnson Co., 371 Mass. 140, 144-145, 355 N.E.2d 315(1976). Sena v Commonwealth, 417 Mass. 250, 264, 629

N.E.2d 986 (1994).

Generally, this condition is satisfied if the individual's conduct would constitute "state action" for the purposes of the fourteenth amendment. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982). "If the challenged conduct of respondents constitutes state action as delimited by our prior decisions, then that conduct was also action under color of state law and will support a suit under 1983"; See also Griffin v. Maryland, 378 U.S. 130, 135 (1964)

"action of one who possesses state authority and purports to act according to that authority is state action even if not authorized under state law, and may violate the equal protection clause."

Judge Posner, in Bowers 686 F. 2d at 618 declared that:

"if the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." This "position of danger" test exactly as a "special relationship" to expose the state to section 1983 liability for failure to act. The Defendant, Evan Ehmann, Licsw, was appointed by the Commonwealth of Massachusetts Probate and Family Court Judge Geoffrey Wilson. The Guardian Ad Litem's role is Investigatory and regulated by the standards for category F Guardian Ad Litem investigators. The Guardian Ad Litem, a state actor, by appointment of the Commonwealth of Massachusetts Probate and Family Court Judge, was not, granted the right by or from the court to violate the plaintiff's civil rights. Thus not only did the defendant, Evan Ehmann, as Guardian Ad Litem violate the constitutional rights of the Plaintiff under 42 U.S.C. §1983, which grants the plaintiff a federal cause of action, the Guardian Ad Litem, in conspiracy with the other defendants, utilized recordings provided by the defendant, Mary Jane Stern and the defendant, Gary Matteson, by and use of the ownership of the residence and telephone, whereupon the illegally seized recordings took place, also violated the civil rights of the three minor children.   Plaintiff sought to

communicate with his three minor children, a federal cause of action against the Defendant Evan Ehmann, as an appointed "officer" of the Commonwealth of Massachusetts, in proceedings of the Probate and Family Court, Hampshire County, Massachusetts extends to the other two defendants as well.

"42 U.S.C. §1983 of the Civil Rights Act of 1871 renders individuals in state government liable when they deprive citizens of "any rights, privileges or immunities secured by the Constitution and laws of the United States"

"42 U.S.C.S. §1983 imposes liability for violations of rights protected by Federal Constitution, not for violations of duties of care arising out of tort law" Baker v McCollan (1979) 443 US 137, 61 L Ed 2d 433, 99 S Ct 2689.

"In action under 42 U.S.C.S. § 1983 first inquiry is whether plaintiff has been deprived, within meaning of §1983, of right secured by Constitution and laws of United States." Martinez v California (1980) 444 US 277, 62 L Ed 2d 481, 100 S Ct 553, reh den (1980) 445 US 920, 63 L Ed 2d 606, 100 S Ct 1285.

The act of illegally tape recording the plaintiff with the three minor children eroded the ability to be secure in the three minor children's private conversations with their parent, this plaintiff. The defendants, not only violated the plaintiff's rights, they violated the rights of the three minor children. In short, the three defendants are criminals, and should be prosecuted as criminals. Plaintiff's pleading should, for all intensive purposes, be considered factual and real, not "alleged" as defendants counsel wish to aver to this honorable court. Plaintiff has provided this court with evidence to show that a violation of federal law and state law has been committed by the act and actions of the three defendants, individually, and collectively.

Under Massachusetts Rules of Civil Procedure 12(b)(6), 365 Mass. 754 (1974), "the allegations of [a] complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor are to be taken as true." Nader v. Citron, 372 Mass. 96, 98, 360 N.E. 2d 870

(1977), quoting from Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). "There is no requirement that the plaintiff's complaint state the relevant facts with completeness or precision." Ahern v. Warner, 16 Mass. App. Ct. 223, 226 n.2, 450 N.E. 2d 662 (1983), "Our analysis must be based upon an indulgent reading of the complaint, Haggerty v. Globe Newspaper Co., 383 Mass, 406, 409, [*334] 419 N.E. 2d 844 (1981).

Plaintiff provided the honorable Judge Geoffrey Wilson with the necessary elements for the redaction of certain illegally obtained findings within the report of the Guardian Ad Litem of November 29, 2004. In light of this, in light of the fact that plaintiff has provided this court with the police report from the North Adams Police Department, and the three pages of the Guardian Ad Litem's report, the allegations should not be considered "alleged" but rather, "may be drawn therefrom in the plaintiff's favor are to be taken as true."

The Guardian Ad Litem, as a state actor, violated the Constitution of the United States, and the laws of the United States. In addition, the Guardian Ad Litem, is not, above the constitution of the United States. The Guardian Ad Litem is not above the Constitution of Massachusetts, Article V:

"All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them."

Massachusetts Article VI:

"No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public; and this title being in nature neither hereditary, nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver, or judge, is absurd and unnatural."

Massachusetts Article XI:

"Every subject of the Commonwealth ought to find a certain remedy, by having recourse

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

48

to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely; and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

Massachusetts Article IIV, in part states:

"Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions."

Massachusetts Article VII:

"Government is instituted for the common good; for the protection, safety, prosperity, and happiness of the people; and not for the profit, honor, or private interest of any one man, family or class of men; Therefore the people alone have an incontestable, unalienable, and indefeasible right to institute government; and to reform, alter, or totally change the same, when their protection, safety, prosperity and happiness require it."

## ALIENATION OF AFFECTIONS AND PARENTAL ALIENATION SYNDROME

The act of alienating children away from one parent is termed Parental Alienation Syndrome. It has been well-documented and is recognized in twenty states, and as the Army Lawyer noted in March, 2002:

"In its simplest terms, parental alienation occurs when one parent engages in a campaign to drive a wedge between a child and the targeted parent. Attempts at parental alienation may be as subtle as a persistent snide remarks, or as blatant as false allegations of sexual abuse."

Dr. Richard Gardner coined the phrase "Parental Alienation Syndrome" in 1985 in the context of false child abuse allegations against the non-custodial parent. The Army Lawyer, in March 2002 further noted that:

"Proponents of PAS currently recognize the syndrome as potentially encompassing four different criteria areas; access and contact blocking, unfounded abuse allegations, deterioration in

relationship since separation, and intense fear reaction by children." Plaintiff hereby annexes to this complaint the document as Exhibit "7" Does DSM-IV have equivalents for the Parental Alienation Syndrome (PAS) Diagnosis, by Richard A. Gardner, M.D. Department of Child Psychiatry, College of Physicians and Surgeons Colombia University, New York, New York and Doerman v. Doerman, Court of Appeals of Ohio, Twelfth Appellate District, Butler County

The court held in Ferriter v. Daniel O'Connell's Sons, Inc., 381 Mass. at 510 that:

"a minor child has a strong interest in his parent's society."

The three minor children had a strong interest in a relationship with their father, the plaintiff, prior to the illegal actions of the defendants. Through the act of illegally wiretapping the plaintiff with the three minor children, which violated federal statutory law, and caused a reaction from the three minor children, which deprived the plaintiff with the "society and companionship" of the three minor children, by the defendants "alienating the affections" of the three minor children, over the course of eight months by the defendants illegal act and actions, the plaintiff maintains a cause of action under federal constitutional principles and federal law against the defendants herein named.

### HOW 42 USCS §1983 APPLIES TO THE DEFENDANTS MARY JANE STERN AND GARY MATTESON

Surely our checks and balances of government affords our judiciary the equitable power to remedy all wrongs, even if statute has not been enacted or has been abolished.

Plaintiff argues that the act and actions of the defendants illegal activities caused a reverse transitive theory of law. In using transitive properties, in logic and theory, if $A = B$, and $B = C$, then $A = C$. This is fundamental. Defining the letters would be as follows: $A =$ defendant Mary Jane Stern; $B =$ defendant Gary Matteson; $C =$ defendant Evan Ehmann, Licsw. Since A and B cohabitate with each other, residing in the same address, and both are over the age of 18 to make informed, legal decisions, and decided, individually and collectively, to

intercept the conversations of plaintiff and the three minor children, upon procuring illegally recording equipment to attach to the phone of the defendant Gary Matteson, at the residence of the defendant Gary Matteson, which also is the abode of the three minor children, A = B; when A proceeded to deliver the recording to C, which is the defendant Guardian Ad Litem, Evan Ehmann, Licsw, it would thus extend to B as well.

The three defendants acted in a manner consistent with conspiracy to commit a crime and violated the plaintiff's property rights under 18 USCS §2510 et seq.;18 USCS §1983; 18 USCS 242.

The reverse is true of the aforementioned transitive properties. Thus, reversing the above transitive properties, before Evan Ehmann, Licsw, even wrote of the illegal recordings in the Guardian Ad Litem's report, *by receiving the stolen property, the illegally procured tape, at the residence of the defendants A and B, plaintiff's deprivation of rights thus extended the arm of the state to include the defendants A and B under 42 USCS §1983.*

## CONCLUSION

Wherefore, for the aforementioned arguments herein noted above, for the reasoning set forth in this memorandum, the plaintiff prays that this court shall retain federal jurisdiction of this matter in order to secure the rights of the plaintiff, by and from the violations of the defendants, and all applicable federal law should apply to the defendants, not withstanding any Massachusetts Constitution and state law violations, adjudicated in a separate action, by the State Superior Court of Massachusetts.

Most respectfully submitted this 24 day of October, 2005

Scott Stern
Pro-Se Plaintiff
400 West Main Street
North Adams, Massachusetts 01247

# **CERTIFICATE OF SERVICE**

I, Scott Stern, Pro-Se Plaintiff, in this action of Stern v. Stern, Civil Action No 05-30082 MAP, certify that I have caused a copy of the foregoing document:

Plaintiff's Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

to have been delivered, postage prepaid, to the defendants at their respective addresses on October 24, 2005.

October 24, 2005
_____
Date of Mailing

_____
Signature

Scott Stern
Plaintiff-Appellant and for the unidentified class members
400 West Main Street
North Adams, Massachusetts 01247

this statute and the rights of the plaintiff and plaintiff's three minor children.

"Legislative history behind 18 USCS §2510 (2) reflects Congress' intent that persons engaged in oral communications be protected where utterances occur under circumstances justifying expectation of privacy and court's inquiry is whether communications overheard were uttered by persons who have subjective expectation of privacy and whose expectations are objectively reasonable; evidence supported finding that police officer had reasonable expectation of privacy in his office; business office need not be sealed to offer occupant reasonable degree of privacy, and therefore conversation attempted to be overheard was "oral communication" within meaning of 18 USCS §2510 (2). (United States v. McIntyre (1978, CA9 Ariz.) 582 F 2d 1221)

Plaintiff reasonably believed that the conversations between himself and the three minor children, individually, or collectively, were that of a intimate nature, and plaintiff maintains his legal subjective expectation of privacy regarding the conversations illegally seized. Plaintiff has never authorized the recording of his voice by means of any equipment by the defendant, Evan Ehmann, or defendant's co-conspirators, Mary Jane Stern and Gary Matteson. Plaintiff did not reasonably believe, that his three minor children, by acts and actions of the defendants Mary Jane Stern and Gary Matteson, that his conversations would be electronically monitored and recorded, without his permission and knowledge, contrary to the Constitution and laws of the United States, in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and plaintiff's civil rights under 42 USCS § 1983.

"Persons reasonable expectation of privacy is matter to be considered on case-by-case basis, taking into consideration its unique facts and circumstances; test applied is 2 part: (1) that person involved have subjective expectation of privacy; and (2) was that expectation objectively reasonably; no reasonable person entering private home to sell insurance would anticipate his conversation would be electronically monitored." (Benford v American Broadcasting Cos. (1982, DC Md) 554 F Supp 145).

The Code of Federal Regulations describes under 18 USCS 2516 who may be authorized

Supplement to Memorandum of Law in Opposition to Dismiss the Complaint

4