United States District Court
District of Massachusetts
Western Division


Springfield, Massachusetts              Civil Action No.05-30082-MAP


Scott Stern,               )    Motion for Acceptance and
                           )    Apology
v                          )
                           )
Mary Jane Stern, et al     )
                           )
            Defendants     )
_____

        Now comes plaintiff Scott Stern and hereby moves this court for a

MOTION FOR ACCEPTANCE and Apology of United District Court related

documents regarding this aforementioned civil matter.  In so doing,

plaintiff respectfully and remorsefully extends his sincerest apologies

to the United States District Court, the personnel of said court, and

the Honorable Magistrate Kenneth P. Neiman and Honorable Judge Michael

A. Ponsor for plaintiff's oversight to not serve, deliver and provide

certain documents regarding the merits of this case to the opposing

counsel.

        Wherein, for reasons personal and only known by the plaintiff,

the plaintiff moves this court to accept the following Certificate of

Service regarding the submission of certain United States District

Court documents to the opposing counsel which was previously submitted

to this most honorable court.

        Wherefore, plaintiff prays that this honorable court, in serving

this citizen of one of the United States, shall enforce, maintain, and


MOTION FOR ACCEPTANCE AND APOLOGY   1

protect plaintiff's constitutional rights accorded to plaintiff by
means of the Declaration of Independence of the United States
Constitution, and the Amendments to the United States Constitution, and
all applicable federal and state laws that are enacted to protect
individuals such as plaintiff, by granting this MOTION FOR ACCEPTANCE
AND APOLOGY herein submitted to this honorable court regarding the
enclosed Certificate of Service of said papers.


Most respectfully submitted this 12 day of December 2005.

Scott L. Stern

All Rights Reserved without Prejudice

Pro-Se Plaintiff

400 West Main Street

North Adams, Massachusetts 01247

# <u>CERTIFICATE OF SERVICE</u>

I, Scott Stern, Pro-Se Plaintiff, in this action of Stern v.
Stern, et al United States District Court, docket No 05-30082
MAP, certify that I have caused a copy of the foregoing document:

Documents submitted to the United States District Court,
including, but not limited to:

Copy of miscellaneous notes or conversations by the plaintiff
with his three minor children regarding the illegal wiretapping
of the plaintiff by the defendants.

Copy of the Guardian Ad Litem's report regarding the
acknowledgement of receiving illegally recorded and illegally
wiretapped conversations between the plaintiff and the three
minor children

Copy of a North Adams Police Report regarding the recording of an
audible sound not produced by the North Adams Police department

Copy of Affidavit of plaintiff

Copy of plaintiff and defendant Judgment of Divorce Nisi dated
August 31, 1994

Copy of Temporary Agreement of the Parties dated March 16, 1994

Copy of Amendment to Judgment dated February 22, 1995

to have been delivered, postage prepaid, to the defendants at
their respective addresses on December 12, 2005.

Andrus & Wyllie, P.C.
Attorney Erin Wyllie
15 Center Court
Northampton, Massachusetts 01060

The Law Offices of Edward Berlin
Attorney Robert E. Young
278 Main Street, Suite 205
Greenfield, Massachusetts 01301-3302

Long & Holden
100 Summer Street
Boston, Massachusetts 02110

To be delivered, by hand delivery, by the plaintiff, to the
United States District Court, 1550 Main street, Springfield,
Massachusetts on December 12, 2005.

December 12 2005
_____
Date of Mailing

_____
Signature

Scott Stern
Pro-Se Plaintiff
400 West Main Street
North Adams, Massachusetts 01247

**COMMONWEALTH OF MASSACHUSETTS**
**The Trial Court**
**Probate and Family Court**

2004 NOV 29 P 3:54

Docket No. 99D 0490 – D1
HAMPSHIRE DIVISION
PROBATE & FAMILY COURT

**SCOTT STERN**, Plaintiff

vs

**MARY STERN**, Defendant



The Honorable Geoffrey Wilson, Presiding

**REPORT OF THE GUARDIAN AD LITEM**
**Date of Report – November 29, 2004**

Guardian ad Litem
    Evan D. Ehmann LICSW
    PO Box 316
    Ashburnham, MA 01430
    978 827-1316

PHONE CALLS AND MESSAGES

Mary provided me with a tape of messages Scott left for the girls on November 3 and 4, 2004. In the messages he left on the answering machine, Scott was sarcastic, and expressed his frustration at the girls not being home or not answering during the scheduled times, and ended with saying that he called "because I live them and miss them " in the same sarcastic tone present throughout the message. In another message, Kiera called asking for her sisters, and Scott could be heard in the background, prompting her what to say.

Mary provided me with a tape of the telephone conversations between Scott and Amanda and Jessica on November 3 and 4, 2004. Throughout the conversation, a beep could be heard every 10 seconds, and Scott commented on it, asking Amanda if he was being taped, and telling her it was illegal. Amanda told him she did not want to be put in the middle. Scott asked Amanda if there was anything she wanted to talk about, and she replied "nothing." Scott asked why she hadn't answered the phone at 8:00, and Amanda replied she had been online, and Scott informed her she was required to be off by 8:00 so he can talk with her sisters. Scott asked if her sisters were both home, and she said yes, and there was a long silence.

Scott wished her happy birthday, and she told him she didn't care, and that she didn't expect anything from him, and didn't want anything because she would not get it anyway. He asked if she was trying to imply that he has never given her anything, then said lets move forward, and asked her what she wanted. She said that it was too late to ask her on her birthday, and he said that she couldn't fault him for not asking the previous evening because no-one had answered his calls, so technically he could have asked before. She talked about having been given used toys, and other things from tag sales, and he argued that he had not always given her things from tag sales. This led to her telling him to not cut her off from what she was saying, and asked him several times to please stop, finally telling him again that she doesn't want anything frm him, saying thanks anyway. His response was "boy, that hurts," and asking her if there was anything else negative she wanted to say.

Scott asked her what time it was, and said he could talk until 8:45 since no-one had answered until 8:15. Amanda told him that, no, the call would only go until 8:30, and told him she had to go now, that it was Jessica's turn. Scott asked Amanda what she had gotten for her birthday, and Amanda told him she had been taken out to lunch, and to the mall, and gotten some clothes. Scott asked her if she was going to visit on Sunday, and she said she was not, that she was getting her nose pierced. He asked if she going to get a round stud, and she told him she was getting a diamond. Scott wanted to know who bought it, and the two sparred over whether if was bought or not, and Amanda finally told him that Mary would pay for it when she had her nose pierced. Scott commented that they say diamonds are forever. He said, "Well, happy birthday, sweetheart, that its another birthday I'm missing and another day I can't hug you." Amanda replied, "Yeah, whatever, when have you cared?" Scott asked when hasn't he cared. Amanda ended the call with the fact that she doesn't want anything from him, and said "Here's Jess ," the called loudly for Jessica, who took a minute to come to the phone.

25

Scott asked Jessica "what's up," and she replied that nothing was, that she was tired, and yawned throughout the call. Scott asked if she knew he called at 8:02, and she said she didn't, that she had play practice. She told Scott that the dates for her play were Friday and Saturday, and asked if could come on Saturday, and when he wanted to know why on Saturday, she told him she had a cast party on Friday. He asked what it cost, and she told him it was $6.00, but to bring a little more for the concession stand. He asked where the play was to be held, and she replied it was at Pioneer, and he asked where that was, and she told him. Scott then asked if Caitlin was there, commenting that his call was being cut short because Amanda had been online, so he could not talk to everyone fairly.

Jessica called Caitlin, who said she was not talking, and when asked by Scott, Jessica said she didn't know why. There was a long silence, and Scott said that maybe Caitlin would talk the following night. He asked Jessica what she got Amanda for her birthday, and Jessica said she had gotten nothing because she had been busy with the play, but that she probably wouldn't get anything because Amanda hadn't gotten her anything for Jessica's birthday. Scott asked Jessica if she would see him Sunday, and she said she thought so, and he replied "Great, I'll have good news on Sunday which I can't tell you about now." He told Jessica that she would never know how proud he was of her for many reasons he could not discuss with her at this time. Jessica said she didn't know what else to say, and had to do a lab report. Scott asked if Caitlin wanted to say hello. Jessica told him she was home but didn't want to talk. Scott asked Jessica if Amanda had gone to school that day, and Jessica told Scott he could ask Amanda tomorrow, which he said he could do, and the call ended.

The second call on the tape, apparently the following day, began with Amanda answering and Scott saying "Hi, it's your dad," then away from the receiver, "come here and say hi;," then back to Amanda, "hold on a second." Kiera came on the phone, and Amanda said "Hi, Kiera," and Kiera guessed at who she was talking to, guessing Amanda last, after Jessica and Caitlin. Amanda laughed, calling Kiera a silly goose, and asked how she had been. In the background, Scott could be heard, prompting Kiera to say she loved her and missed her, and told Kiera to ask to have Caitlin on the phone. Shortly thereafter Scott came back on the phone, asking who he was talking to, and Amanda identified herself, and asked why Kiera and Zachary were there, and Scott told her it was because he was they are his children, and they love him. Kiera was put back on the phone, and Scott prompted her to continue to ask for Caitlin. Amanda told Kiera to tell Scott to shut up, which she did, and Scott said that it wasn't nice to tell him that, so Amanda suggested that Kiera tell him that she smelled like stinky poo, which she did not tell Scott. Zachary was put on the phone, and Scott told him to get Caitlin on the phone, or Jessica. Amanda told Zachary to let her talk to Scott first, and this went back and forth between Amanda and Zachary several times, until Scott got on the phone, and she asked him why he put Kiera and Zachary in the middle, which he said he was not. Scott told Amanda to get Jessica, and she told him not to demand that she get Jessica, but called Jessica to the phone.

Jessica came on the phone, and Scott asked who it was and Jessica identified herself, and Scott gave the phone to Kiera, saying "Quick, talk to your big sister." Kiera asked Jessica when

she would paint her nails again, and Jessica told her sometime. Scott came back on the phone telling Jessica to get Caitlin, and Jessica told him she was not going to visit Sunday. He asked why, and she told him she was tired, and he told her it was too bad she was too tired to see her dad. Jessica sighed, and said she was hanging up. Scott asked her where Caitlin was, then said "Well, I've got to get going, I love you and miss you," and the conversation ended.

The phone calls were painful to listen to. There was little acknowledgment by Scott of any of the girls feelings at any time, and sometimes he did not even give an indication he heard what they said. He was sarcastic and argumentative with Amanda, and put both Amanda and Jessica in the middle, asking them to report on what the others were doing, and about the taping of the calls. He also put Kiera and Zachary in the middle by attempting to get Caitlin on the phone so that he could talk to her. Amanda and Jessica did talk to him, but both were clearly, in my judgement, uncomfortable talking to him, and the discomfort increased as the calls progressed.

27

②

Jessica

Election
Homework
Math - Geometry

8:21 — about ten minutes

Seen Roll-top Desk   —   Have?

Dader - Win

Amanda is?   Not Sure

Play Practice

Night of the living beauty Pageant

Shakespeare

Conflir →  Sat Nite - No - working on Project
ates
on Shakespeare in Love   My left foot       Seen
Othello                                                    Not going to list them
In love + War                              Beeping — Don't know what it is?

③ What Else

Don't Know

Sandwich
- Roast Beef
- lettue + cheese

Dinner not w/

initial writing

JLS / JS   Don't want it

Convey the message
to Amanda

Sunday?
Not sure yet

Not sure what anyone else had for dinner

Accidents
Major news events

Don't Know what is

Getting rid of the beeping sound ask Alan or Gary
Happen on any other phone calls
Haven't made any phone calls

Ask   Good news or bad news

Bucket

1 leaf

Dasani Water ?

Beep again - cordless

Don't have a corded phone?

Someone in house own one

Talk to Jessica    Maybe if she wants to talk

Bucket of Water - something

Magnets?    + +    pushed away / Cars? Zachery
          - -                        magnet in hood
          + -    stick              Northampton    Don't
                                    Bernardston    remember

TO GET

SALT

9V Batteries — smoke detectors

BCI-21 Print Cartridge

KIDS CALL — 11/18/04

Caitlin 11/18/04   8:02

( True don't like going )
Leave me Out of it
Young + Innocent
Don't like Going
Doesn't matter

Beeping
IS GARY
THERE

Is Gary there, Is Mary there
X No - Doesn't matter.

Anything you want to tell your
"Nope"

I LY + IMY
Want to talk to Amanda

11/18/04

Do you Know how to turn off the machine

Amanda     Leave me out of this
Don't want to talk about it

whats up
Anything not really
Sisters Uh there No, maybe
Don't know Haven't seen her

Afraid that the Might be in her room
Am I Recording is going to catch my "rudeness"?
Don't want to discuss this with you?
(not my say) Not whether I am or not + turn it off
your say --

③

Rather take the    beep   right now
please hold on

Hello —
___what?___

what? what?
            you said what -
That beeping again

            Established there is a beeping.
Amanda states the above
Also established? Criminally Offensive  looking at
Chapter 272 §99

"JackAss"     Comments  towards me

            ( DROP IT

NOT GONNA STOP + MIGHT AS WELL
leave it alone.

    " Paraphrased or illegally Quoted"

"Subpoena all recordings"

Beeping continues
Nov 18th, 2004
Hello?

Beeping continues

Jessica
IT'S WRONG

In bed, can't do anything.

Feeling Alright
    yes tired
See ya Sunday?
    Think so, probably

NOT GONNA TOLERATE

Can you make it stop?
In bed leave me alone

The Commonwealth of Massachusetts

The Trial Court

Probate and Family Court

Hampshire, ss                                    Docket No.:90D0490D1

| | |
|---|---|
| SCOTT STERN | ) AFFIDAVIT OF SCOTT STERN regarding |
| 400 West Main Street | ) conversations illegally recorded |
| North Adams, Massachusetts | ) by the Defendant and the |
| 01247 | ) Defendant's partner on November |
| | ) 17, 2004. |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Mary Stern | ) |
| 404 Brattleboro Road | ) |
| Bernardston, MA.   01337, | ) |
| Defendant | |

DOCKETED

---

The undersigned states the following under oath:

1. I am the father of three minor children: Jessica Leigh Stern (DOB 9-28-88), Amanda Keri Stern (DOB 11-3-89), and Caitlin Melanie Stern (1-29-91).

2. I, Scott Stern, telephone the three minor children, under court agreement between the parties of September 16, 1997 and August 31, 1994, on Tuesday, Wednesday and Thursday evenings between the hours of 8 p.m. and 8:30 p.m..

3. Through various modifications of M.G.L.A. Chapter 209A orders the call time was modified and has become a "de facto" call time between 8:00 p.m. and 8:30 p.m. on Tuesday, Wednesday and Thursday Evenings.

4. On November 17, 2004, at approximately 8:01 p.m., after experiencing difficulty with the telephone number (413)664-7805

at my residence of 400 West Main Street, North Adams, Massachusetts I proceeded to leave my residence in order to telephone the three minor children at their mother's residence of 404 Brattleboro Road, Bernardston, Massachusetts, the home the Defendant's partner, Gary Matteson.

5. At approximately 8:09 p.m., on November 17, 2004, I, Scott Stern, arrived at the Price Chopper grocery store in order to telephone the three minor children from a Verizon payphone.

6. At 8:09 p.m. on November 17, 2004, one of my three minor children answered the telephone.  This minor child is the second of the three siblings and is named "Amanda Keri Stern"

7. At approximately 8:10 p.m. I, Scott Stern, recognized a beeping sound emanating behind the voice of this minor child, Amanda Keri Stern.

8. I, Scott Stern, asked this minor child directly if I was being illegally recorded and she responded by stating "It's not illegal if you can hear the beeping"

9. I, Scott Stern, explained to my daughter, Amanda Keri Stern, that I have reported this to the Northwestern District Attorney's Office.

10. I, Scott Stern, requested my daughter, Amanda Keri Stern, to make this recording mechanism stop, and she refused to comply with her parent, the plaintiff, this father's, direct request.

11. I, Scott Stern, requested of my daughter that I call her back in a few minutes because I was out of change.

12. I, Scott Stern, having received acknowledgement from my daughter, Amanda Keri Stern, that she would pick up and answer the phone upon my calling in again.

13. I, Scott Stern, hung up the telephone of the Verizon payphone and left the premises of Price Chopper grocery Store, in North Adams, Massachusetts and drove to the North Adams Police Department.

14. I, Scott Stern, arrived at the North Adams Police Department at approximately 8:20 p.m. and entered into the station house to engage in a conversation with the desk dispatcher.

15. I, Scott Stern, engaged in a brief conversation with the Sergeant on duty, Sergeant James Burdick, regarding the telephone contact with the minor children.

16. I, Scott Stern, was allowed to telephone the three minor children from the North Adams Police Department, in order that another entity, legal and official, could hear the sound of the beeps emanating from the telephone calls to the minor children.

17. I, Scott Stern, at approximately 8:30 p.m. on November 17, 2004, at the North Adams Police Department, telephoned the three minor children at the residence of Gary Matteson, 404 Brattleboro Road, Bernardston, Massachusetts at the number of (413)648-9003.

18. I, Scott Stern, telephoned the three minor children in the presence of Sergeant Burdick, and the dispatcher, dispatcher Tupor.

19. I, Scott Stern, was informed by my daughter, Amanda Keri Stern, that the time at their residence was 8:30 p.m. and that she had waited for her father to call back since our conversation at the Verizon payphone at approximately 8:09 p.m.

20. I, Scott Stern, proceeded to not alarm my daughter that I was calling again from the North Adams Police Department and explained that it had taken some time to get some change for the call.

21. During this conversation, between the minor child and the Plaintiff, this father, could clearly hear that their were audible beeps occurring on the telephone line as the telephone conversation was occurring.

22. During this conversation, Sergeant James Burdick of the North Adams Police Department, acknowledged that he heard several beeps

during this conversation between the minor child and the
Plaintiff.

23. I, Scott Stern, the plaintiff in this action, father to the three
minor children, requested this minor child to inquire if her
sisters, the other two minor children were available to speak.
Neither of the other two minor children were available at this
time to engage in a conversation with their father.

24. I, Scott Stern, informed this minor child, during this
conversation at the North Adams Police Department, Amanda Keri
Stern, that I have not seen her for approximately six months and
I would like to see her again.

25. I, Scott Stern, engaged in a conversation, in total of
approximately three minute with this one minor child.  This minor
child was, and has been, instructed to end the telephone
conversation at 8:30 p.m. contrary to the agreement between the
parties dated September 16, 1997.  This agreement allows
conversations to between the minor children and the parent, Scott
Stern, to occur, as long as they do not exceed thirty minutes in
length.

26. I, Scott Stern, was at the North Adams Police Department to
engage in a conversation with the three minor children and to
allow the North Adams Police Department to monitor and verify
that I, Scott Stern, am not the only individual hearing this same
audible sound in conversations with the three minor children.

27. I, Scott Stern, do hereby formally swear and attest that this
audible sound has been part of telephone conversations between
the three minor children and myself, Scott Stern, their father,
the Plaintiff in this action, for approximately the last six
months, during the time the Defendant has been residing at the
residence of Gary Matteson of 404 Brattleboro Road, Bernardston,
Massachusetts.

28. I, Scott Stern, have been informed that such activity by the
    Defendant, has been, and continues to be in violation of my civil
    rights, my paternal rights, my substantive rights, my legal
    rights, the Massachusetts General Laws, United States Federal
    Laws.

29. I, Scott Stern, have learned, through various sources, that
    taping telephone conversations without someone's permission is a
    violation of the Massachusetts General Laws and the United States
    Federal Laws and is considered a criminal offense.

30. I, Scott Stern, have never authorized my ex-wife, Mary Jane
    Stern, to engage in recording telephone conversations between
    myself and the three minor children.

31. I, Scott Stern, have never received any, written or verbal, legal
    or authenticated, by electronic or any other communication from
    my ex-wife, Mary Jane Stern, notification that conversations with
    the three minor children would be recorded on the, court allowed,
    Tuesday, Wednesday and Thursday evening telephone contact.

32. I, Scott Stern, have never authorized my ex-wife's partner, Gary
    Matteson, of 404 Brattleboro Road, Bernardston, Massachusetts to
    engage in recording telephone conversations between myself and
    the three minor children.

33. I, Scott Stern, have never received any written or verbal, legal
    or authenticated, by electronic or any other communication from
    Gary Matteson, of 404 Brattleboro Road, Bernardston,
    Massachusetts, the residence where the three minor children
    reside, notification requesting my explicit permission and
    authorization that telephone conversations between the three
    minor children and myself, would be recorded on the, court
    allowed, Tuesday, Wednesday and Thursday evening telephone
    contact.

34. I, Scott Stern, do hereby formally declare and attest that this illegal wiretapping has been engaged in by the Defendant for at least six months at this residence and believe that such actions on the part of the Defendant, and the Defendant's partner, have knowingly, maliciously and purposefully engaged in Parental Alienation of the three minor children towards and against their paternal father, Scott Stern.

35. I, Scott Stern, do hereby formally declare and attest that this illegal activity, has not been authorized or ordered, by any Federal Agency, Massachusetts Governmental Agency, the Massachusetts General Court, the Department of the Trial Court, and Federal or State Police Department, by authorization of any Federal or State Law, Code of Federal Regulations, Code of Massachusetts Regulations, through the RICO or ERISA acts of the Federal Government, or any court order allowing the illegal monitoring and wiretapping of the plaintiff's telephone conversations with the three minor children.

36. I, Scott Stern, do hereby formally declare and attest, that the three minor children have been engaging in the practice of lying in order to cover up the illegal action of the Defendant and the Defendant's partner, by stating, in previous conversations, with their father, the plaintiff, Scott Stern, that this audible beeping sound, was the sound of a "cordless phone losing its battery strength" and that "the phone needed to be recharged"

37. I, Scott Stern, do hereby formally declare and attest, that one of the three minor children, during a telephone conversation within the last week, that "she wanted to remain out of it" referring to the activity that the Defendant was engaging in, the illegal recording of conversations between the plaintiff and the three minor children, which this plaintiff had considered it to be, as illegal and authorized.

38. I, Scott Stern, do hereby formally declare and attest, that when one parent engages in utilizing the children to falsify and lie toward and to another parent, in order to engage in covering up illegal activity, such as the defendant and defendant's partner have done, including illegal wiretapping of telephone conversations, it is tantamount to emotional abuse of the three minor children and it is a demonstrative form of parental alienation.

39. I, Scott Stern, do hereby swear and attest, that the Plaintiff and Defendant in this matter did hereby enter into a Judgement of Divorce Nisi, granted by this court on August 31, 1994 and Amended accordingly on September 16, 1997 and amended again in a Temporary Order between the parties, but never agreed that either party could engage in recording telephone conversations with the other, individually, or during telephone contact with the minor children.

40. I, Scott Stern, do hereby swear and attest, that Mary Jane Stern, the Defendant in this matter has violated our Judgement of Divorce Nisi, granted on August 31, 1994, by engaging in activity that has been a violation of this plaintiff's personal liberties, agreed upon by the parties.

I have stated all of the above based upon my own knowledge, information and belief; and so far as upon my information and belief, I believe this information to be true.

Sworn to under the pains and penalties of perjury this day of November 18, 2004

Scott Stern

400 West Main Street

North Adams, Massachusetts 01060

# ACKNOWLEDGMENT CERTIFICATE

On this _____ day of _____, 20_____, before me, the undersigned

notary public, personally appeared _____

<small>(name of document signer)</small>

proved to me through satisfactory evidence of identification, which were_____,

to be the person whose name is signed on the preceding or attached document and acknowledged to

me that (he) (she)  signed it voluntarily for its stated purpose.


(as partner for _____, a corporation)

(as _____ for _____, a corporation)

(as attorney in fact for _____, the principal)

(as _____ for _____, (a) (the)_____ )

_____

<small>(official signature and seal of notary)</small>

My Commission Expires _____

# COMMONWEALTH OF MASSACHUSETTS
## THE TRIAL COURT
### PROBATE AND FAMILY COURT DEPARTMENT

HAMPSHIRE, ss

Docket No. 90D0490D1

| | |
|---|---|
| **MARY STERN,**<br>Plaintiff | ) Mar 15   9 41 AM '94<br>)<br>)          FILED<br>)    HAMPSHIRE DIVISION |
| v. | ) PROBATE  F. Temporary Agreement of the Parties<br>) |
| **SCOTT STERN,**<br>Defendant | )<br>)<br>) |

The parties in the above captioned divorce case hereby agree to the following:

1.    Each party agrees that he and she will not impose any restraint on the personal liberty of the other.

2.    Each party agrees that he and she will not attempt to harm the other physically, or by placing her or him in fear of imminent serious physical harm.

3.    Scott Stern agrees to stay away from Mary Stern's residence which is located at: 523 Meadowbrook Apartments in Northampton.

4.    Scott Stern agrees that he will not contact Mary Stern either in person, by telephone, in writing, or otherwise, and that he will stay at least 100 yards away from her, except in the presence of the supervisor(s) during pick up and drop off of the children for visitation. The parties agree that during the exchange Scott Stern will remain in the car, and that if necessary, the supervisor(s) will help Mary Stern transfer the children. This provision will be revised to eliminate references to supervisors at such time as the parties agree or the court orders that Scott Stern's visitation shall be unsupervised.

5.    The parties agree that they will not make any disparaging or threatening remarks to each other or to the supervisor(s) during the exchange for visitation or at any time.

6.    The parties agree that Mary Stern has physical custody of the minor children, Jessica Stern; Amanda Stern; and Caitlin Stern, and that Scott Stern will not impair such custody except through court action.

1

All until further order of the court.

_____
Scott Stern

_____
Stephen R. Kaplan, Esq.

_____
Mary Stern

_____
Sharon Coose, Esq.

2

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
THE PROBATE AND FAMILY COURT DEPARTMENT

HAMPSHIRE DIVISION

Docket No.  90D0490.01

MARY STERN
          Plaintiff
                                        )
                                        )
                                        )
v                                       )
                                        )        AMENDMENT TO JUDGMENT
                                        )
SCOTT STERN                             )
          Defendant                     )

After a review hearing, pursuant to the Judgment of Divorce Nisi dated August 31, 1994, IT IS ORDERED THAT both parties attend the Parents and Children in Transition Program (PACT) on the first available date.

Upon completion of the PACT Program by both parties, counsel shall schedule a further review hearing on the matters of visitation and health insurance.

February 22, 1995
      Date

Honorable David G. Sacks
Judge of Probate and Family Court

Hampshire, ss., Probate Court, Northampton, Mass.,
A true photocopy
Attest: _____ Register    MAY 1 6 1996

## CERTIFICATE OF SERVICE

I, Scott Stern, Plaintiff in this action of Stern v. Stern, Case Number 90D0490D1, certify that I have caused a copy of:

Motion to Modify Motion of March 16th, 2005 allowing the Northwestern District Attorney and/or Berkshire District Attorney to include the United States District Attorney and/or the Federal Bureau of Investigation Agency of the United States government the proposed order submitted to this honorable court and to be heard on April 20, 2005 allowing three pages, to be modified to four pages, of the Guardian Ad Litem's report to be submitted to the United States District Court under Docket No. 05-30082-KPN, specific and relevant to the illegal wiretapping statute M.G.L. Ch. 272 §99 and United States Code 18 U.S.C. §2510, 2511 by the act and actions of the defendant and defendants co-conspirators.

This motion, to be delivered, by hand, on April 11th, 2005, nine days before the hearing of April 20th, 2005, to Erin Wyllie, of Andrus & Wyllie, P.C., 16 Center Court, Northampton, Massachusetts 01060 on April 11, 2005 together with notice that same is marked for hearing on April 20th, 2005 at 2:00 p.m.

_April 11th 2005_

Date of Mailing/Delivery

_Scott Stern_

Signature

The within motion is hereby
ALLOWED - DENIED. ———

Date: 6/24/05

_Scott_____

Justice, Probate and Family Court

_Only as to modification of motion, and as to fact that copies of the appropriate portions of the guardian ad litem report may be submitted to the law enforcement agencies listed._